UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

DAWNE LULEFF, on behalf of        :
herself and all others similarly situated,  :

                          :       No. 06-CV-1435 (JGK)

               Plaintiff,   :

                          :

        v.                 :

                          :

BANK OF AMERICA, N.A.; COLUMBIA    :
FUNDS SERIES TRUST f/k/a NATIONS FUNDS  :
TRUST; WILLIAM P. CARMICHAEL; and    :
BANK OF AMERICA CORPORATION,      :

                          :

               Defendants.  :

------------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS BANK OF AMERICA, N.A. AND BANK
## OF AMERICA CORPORATION'S MOTION TO DISMISS

REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
(212) 521-5400

435 Sixth Avenue
Pittsburgh, PA 15219
(412) 288-3131

Attorneys for Defendants
Bank of America, N.A. and
Bank of America Corporation

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................1

FACTUAL BACKGROUND .............................................................................2

    I.    Only the Bank Had a Relationship With Plaintiff Luleff ........................2

    II.   Plaintiff Luleff As Co-Trustee Authorized the Investments
        She Now Challenges ................................................................................3

ARGUMENT .....................................................................................................5

    I.    This Court Should Decline Jurisdiction Over Plaintiff's Complaint
        Under the First-Filed Rule ......................................................................6

    II.   SLUSA Mandates Dismissal of Plaintiff's Class Claims .......................7

        A.  Plaintiff alleges a covered class action ........................................8

        B.  Plaintiff's claims are founded on state law ...................................9

        C.  The core allegations in Plaintiff's Complaint are that Defendants
            misrepresented or omitted material facts ......................................9

        D.  Plaintiff's claims are in connection with the purchase of a covered
            security........................................................................................10

    III.  As This Court Recently Confirmed, Plaintiff's Claims Are Barred As a
        Matter of Law Because Plaintiff Ratified and Consented to the
        Investments She Challenges ..................................................................12

        A.  Substantive Choice-of-Law Analysis Results in Application of
            Missouri Law ...............................................................................13

        B.  Based on <u>LaSalle</u> and Missouri Law, Plaintiff's Claims are Barred ..............14

    IV.  Plaintiff's Claims Fail Because Neither She Nor the Trust
        Has Suffered Any Loss .........................................................................16

    V.   Plaintiff's Claim For Breach of Fiduciary Duty Is Time-Barred and
        Fails to State a Claim As a Matter of Law.............................................16

        A.  New York's Procedural Choice-of-Law Analysis for Statute of
            Limitations Bars Plaintiff's Breach of Fiduciary Duty Claim .........................17

B.  There Can Be No Breach of Fiduciary Duty Where the Trustee
Complied With the Terms of the Trust Instrument and State Law..................18

VI.  Because No Term of the Contract Has Been Breached and Because the
Law Authorized the Bank's Conduct, Plaintiff's Breach of Contract
Claim Fails to State a Claim .................................................................................20

VII.  Plaintiff's Claim For Unjust Enrichment Fails As a Matter of Law
Because No Benefit to Defendants Was Improper or Unjust Here ......................22

VIII.  Plaintiff Lacks Standing to Seek Injunctive Relief..................................................22

IX.  Because Neither Plaintiff Nor the Luleff Trust Had Any Kind of Relationship
With BAC, All Claims Against BAC Should Be Dismissed.................................23

CONCLUSION.........................................................................................................................24

TABLE OF AUTHORITIES

**Cases**

800-Flowers, Inc. v. Intercontinental Florist, Inc., 860 F.Supp. 128 (S.D.N.Y. 1994) ...............6, 7

Adam v. Jacobs, 950 F.2d 89 (2d Cir. 1991) .................................................................................6

American Home Assur. Co. v. Merck & Co., Inc., 329 F.Supp.2d 436 (S.D.N.Y. 2004)............13

AroChem Int'l, Inc. v. Buirkle, 968 F.2d 266 (2d Cir. 1992).......................................................13

Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S.
    519 (1983).............................................................................................................................5

Board of Education of the Mount Sinai Union Free School District v. New York State
    Teachers Retirement System, 60 F.3d 106 (2d Cir. 1995).................................................23

Boatmen's Trust Co. v. Sugden, 827 S.W.2d 249 (Mo. App. 1992)...............................................21

Burns v. Warwick Valley Central School Dist., 166 F. Supp.2d 881 (S.D.N.Y. 2001) ...............23

City of Los Angeles v. Lyons, 461 U.S. 95 (1983) .......................................................................23

Denny v. Guyton, 57 S.W.2d 415 (Mo. 1932)...........................................................................3, 15

Estate of Gump v. Wells Fargo, 128 Cal.App.3d 111, 180 Cal. Rptr. 219 (1982) ......................16

Felton v. Morgan Stanley Dean Witter & Co., 429 F. Supp.2d 684 (S.D.N.Y. 2006) .............8, 10

First City Nat. Bank and Trust Co. v. Simmons, 878 F.2d 76 (2d cir. 1989).................................6

First National Bank of Kansas City v. Hyde, 363 S.W.2d 647 (Mo. 1962) ..................................18

Hughes v. LaSalle Bank, N.A., 419 F.Supp. 2d 605 (S.D.N.Y. 2006).........................12, 15, 17, 18

Hughes v. LaSalle Bank, 2006 U.S. Dist. LEXIS 48268 (July 14, 2006) ..............................12, 19

In re Estate of Chrisman, 746 S.W.2d 131 (Mo.App. 1988) ........................................................15

In re McCune, 705 A.2d 861 (Pa. Super. 1997) ...........................................................................16

In the Matter of Estate of Scott, 913 S.W.2d 104 (Mo. App. E.D. 1995).....................................21

Insurance Co. v. Chase, 72 U.S. 509 (Mem.) (1867)................................................................3, 14

Kaczmarek v. Int'l Bus. Machs. Corp., 186 F.R.D. 307 (S.D.N.Y. 1999) ...................................12

Kingdom 5-KR-41, LTD. V. Star Cruises PLC, No. 01 Civ. 2946, 2004 WL 444554
    (S.D.N.Y. March 10, 2004)...............................................................................................10

Krock v. Kipsay, 97 F.3d 640 (2d Cir. 1996) ..............................................................................13

Kutten v. Bank of America, 04-CV-244 slip. Op. at 4 (E.D. Mo. May 26, 2006) .................16, 23

Lander v. Hartford Life & Annuity Ins. Co., 251 F.3d 101 (2d Cir. 2001) ....................................10

Lee v. Bankers Trust Co., 166 F.3d 540 (2d Cir. 1999) .................................................................13

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) ....................................................................23

Maryland Cas. Co. v. Continental Cas. Co., 332 F.3d 145 (2d Cir. 2003) ....................................14

Mason v. Am. Tobacco Co., 346 F.3d 36 (2d Cir. 2003) ..................................................................5

Matthew Lee, et al. v. Board of Governors of the Federal Reserve System, et al., 118 F.3d
    905 (2d Cir. 1997) .....................................................................................................................23

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 126 S.Ct. 1503 (2006)................7, 8, 10, 11

Morrison v. Asher, 361 S.W.2d 844 (Mo.App. 1962) ...............................................................3, 15

Motion Picture Lab Technicians Local 780, I.A.T.S.E. v. McGregor, 804 F.2d 16
    (2d Cir. 1986).............................................................................................................................6

OFW Corp. v. City of Columbia, 893 S.W.2d 876 (Mo. App. W.D. 1995)...................................21

Padula v. Lilarn Prop. Corp., 84 N.Y.2d 519 (1994) ...................................................................13

Patrowicz v. Transamerica Homefirst, Inc., 359 F.Supp.2d 140 (2d Cir. 2005) ...........................7

Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1196 (3d Cir. 1993) ....................2

Press v. Quick & Reilly, Inc., 218 F.3d 121 (2d Cir. 2000) .........................................................10

Reinke v. Bank of America, No. 04-CV-1758, 2005 WL 3454428 (E.D. Mo.
    Dec. 16, 2005)..........................................................................................................................23

Rolla Lumber Co. v. Evans, 482 S.W.2d 519 (Mo. App. 1972)....................................................22

Rothman v. Gregor, 220 F.3d 81 (2d Cir. 2000)..............................................................................2

Rowinski v. Salomon Smith Barney, Inc., 398 F.3d 294 (3d Cir. 2005).........................................8

S&J, Inc. v. McLoud & Co., 108 S.W.3d 765 (Mo. App. 2003)...................................................22

Samuels v. E.F. Drew & Co., 7 F.2d 764 (S.D.N.Y. 1924).......................................................3, 15

Schultz v. Boy Scouts of Am., Inc., 65 N.Y.1d 189 (1985) ..........................................................13

Scullin v. Clark, 242 S.W.2d 542 (Mo. 1951) ..............................................................................15

SEC v. Zandford, 535 U.S. 813 (2002).......................................................................................8, 11

Spencer v. Wachovia Bank, N.A., No. 05-81016, slip. Op 3 (S.D. Fla.
    May 10, 2006).............................................................................................7, 9, 10, 11, 16

Stuart v. Am. Cyanamid Co., 158 F.3d 622 (2d Cir. 1998) ....................................................13

Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F. 3d 119 (2d Cir. 2005) ...............................2

Super of Ins. of N.Y. v. Bankers Life & Cas. Co., 404 U.S. 6 (1971) ....................................11

Trotter's Corp. v. Ringleader Restaurants, Inc., 929 S.W.2d 935 (Mo. Ct. App. 1996) ..............20

U.S. v. Bonanno Organized Crime Family of La Cosa Nostra, 879 F.2d 20 (2d Cir. 1989) ...........5

Van de Kamp v. Bank of America, 204 Cal. App. 3d 819 (1988) ...............................................22

Volker Court, LLC v. Santa Fe Apartments, LLC, 130 S.W. 3d 607 (Mo. Ct. App. 2004) ..........20

Walker v. James, 85 S.W.2d 876, 884 (Mo. 1935) ..................................................................15

Warth v. Seldin, 422 U.S. 490 (1975) ....................................................................................23

Weiner v. Klais & Co., Inc., 108 F.3d 86 (6th Cir. 1997) ..........................................................2

William D. Graves d/b/a Graves Construction v. Jerry Berkowitz, et al., 15
    S.W.3d 59 (Mo. App. 2000) ............................................................................................22

Zurich Ins. Co. v. Shearson Lehman Hutton, Inc., 84 N.Y.2d 309 (1994) ...................................14


**Statutes**

15 U.S.C. §§ 77p(f)(2)(A)(i)(I) ...............................................................................................9

15 U.S.C. §§ 77p(f)(3)77r(b) ...............................................................................................10

15 U.S.C. §§ 77r(b) ............................................................................................................10

15 U.S.C. §§ 77bb(f)(1)-(2) ...................................................................................................8

15 U.S.C. §§ 78bb(f)(5)(B)(i)(I) .............................................................................................9

Mo. Rev. Stat. § 456.520 .......................................................................................................2

Mo. Rev. Stat. § 469.901.2 ...................................................................................................18

Mo. Rev. Stat. § 516.120(4) ..................................................................................................17

Mo. Rev. Ann. Stat. § 362.550(11) ........................................................................................19

Mo. Rev. Ann. Stat. § 469.913 .............................................................................................19

N.Y. C.P.L.R. § 202 ............................................................................................................17

Securities Act of 1933, Sections 18(b)(1) and (b)(2) ................................................................10

**Rules**

Fed. R. Civ. P. 10(c) ..............................................................................................................2

Fed. R. Civ. P. 12(b)(6)......................................................................................................1, 5

**Other Authorities**

Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1327 (1990) .................2

Restatement (Second) of Conflict of Laws § 188 ......................................................................14

Restatement (Second) of Trusts § 197 and § 198 cmt b. (1959).............................................20, 21

## **INTRODUCTION**

This case concerns the role of Bank of America, N.A. (the "Bank") as the corporate co-trustee for a Missouri trust. Plaintiff served as co-trustee with the Bank until the trust relationship terminated in 2005. In the Complaint, Plaintiff purports to bring state law claims against the Bank, its holding company, its affiliated mutual fund company, as well as one of the mutual fund company's board members, even though she had no relationship with any of these Defendants other than the Bank. Specifically, in this action, she challenges the investment of some of the trust's assets in the Bank's affiliated mutual funds. Plaintiff brings these claims despite the undisputed facts that (1) as co-trustee, she stands in the shoes of the Bank, (2) as co-trustee, she authorized in writing each of the investments she now challenges, and (3) both the trust instrument in question and Missouri law authorized the investment of trust assets in affiliated mutual funds and the Bank's compensation.

As outlined below, each of Plaintiff's claims suffers numerous, fundamental defects and should be dismissed. Initially, this Court should decline jurisdiction and dismiss this case pursuant to the first-filed rule because Plaintiff admits that this action is identical to a previously filed action. As to the merits, recent authority from several courts provides numerous, independent grounds for dismissal of Plaintiff's claims as a matter of law. First, based upon a recent opinion from the United States Supreme Court and a recent district court case squarely on point, the Securities Litigation Uniform Standards Act preempts every claim, mandating dismissal. Second, as this Court confirmed just a few months ago in granting a motion to dismiss in a similar case involving Plaintiff's counsel, because Plaintiff herein undisputably authorized, ratified and consented to the investments she now challenges, she is barred as a matter of law from bringing these claims. Third, based upon recent decisions of two district courts in cases also squarely on point, Plaintiff lacks standing to seek injunctive relief. Finally, each of her state law claims fail for a number of additional reasons, including the fact that Plaintiff does not plead any loss because the trust did not suffer a loss. Accordingly, all counts

of the Complaint should be dismissed, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## FACTUAL BACKGROUND

### I.    Only the Bank Had a Relationship With Plaintiff Luleff

Plaintiff's claims are derived from investments of assets in a trust account for which she and the Bank served as co-trustees.  The Desire Cobble Trust ("Luleff Trust") was established in November 2001 by Court Order of the Circuit Court of the City of St. Louis, Missouri.  See Complaint ¶14, Exhibit 1 to Affidavit of Andrew Messite ("Messite Affidavit"); see also Exhibit 2 Messite Affidavit.[1]  The trust instrument creating the Luleff Trust granted broad discretionary investment authority to the Bank and Plaintiff as co-trustees:

> A. General Powers.  Unless otherwise prohibited herein, in addition to the powers otherwise invested by law, including the statutory powers enumerated in RSMo. Section 456.520[2] hereby incorporated herein, as such statute may be amended, the Trustee of the Trust established under this instrument shall be authorized to take with regard to the administration, management and investment of the Trust funds any action deemed by the Trustee to be for the best interests of the Trust, in the sole and absolute discretion of the Trustee, and without procuring the authorization of any court.  All distributions of Trust assets must be in accordance with the terms and conditions of this Trust Agreement.  All decisions and actions taken in good faith by the Trustee shall be binding and conclusive on all parties.

---

[1]    Plaintiff did not attach the trust instrument or her authorization to the Complaint.  On a Motion to Dismiss, the court may consider "any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint."  Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005).  This includes documents "that the plaintiff either possessed or knew about and upon which [plaintiff] relied in bringing the suit."  Rothman v. Gregor, 220 F.3d 81, 88-89 (2d Cir. 2000).  Under Fed. R. Civ. P. 10(c), a defendant may introduce and the court may consider pertinent documents on a motion to dismiss if a plaintiff fails to attach the documents to its complaint.  E.g., Weiner v. Klais & Co., Inc., 108 F.3d 86, 89 (6th Cir. 1997) (citations omitted); 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1327 (1990).  Otherwise, plaintiffs with legally deficient claims (like Plaintiff here) could survive a motion to dismiss simply by failing to attach a dispositive document.  Weiner, 108 F.3d at 89.  Thus, even though Plaintiff did not attach to the Complaint various documents pertinent to the Luleff Trust, this Court may consider those documents (which are attached as exhibits) in ruling on Defendants' Motion to Dismiss.  See also Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

[2]    Missouri Revised Statute § 456.520 was repealed in 2004 with the enactment of the Missouri Uniform Trust Code.

Exhibit 2 at pp. 11-12, Messite Affidavit.  Notably, in the trust instrument, there is no prohibition

for the use of affiliated mutual funds as an investment vehicle for the Luleff Trust.  Indeed, the

trust instrument provides the co-trustees with "sole and absolute discretion" for investment

authority and does not impose any limitation on the type of investments which could be made

with the assets held in the Luleff Trust.  See id.  The trust instrument also permits the trustees

(the Bank and Plaintiff) to receive compensation for services rendered as a fiduciary for the

Luleff Trust.  See id. at p. 4.

Finally, the trust instrument provides that Plaintiff and the Bank were jointly vested with

all the powers enumerated in the instrument.  Indeed, the trust instrument provides that "all

decisions and actions taken in good faith by the Trustee shall be binding and conclusive on all

parties" and that "the concurrence and joinder of the corporate Trustee and any individual

Trustee shall control in all matters."  See id. at pp. 4, 11-12.  Additionally, although the Bank had

custody of the Luleff Trust assets, the trust instrument explicitly provides that "the rights, duties

and obligations of an individual Trustee as fiduciary shall not in any way be limited or restricted

merely by virtue of the fact that he or she does not have custody of the Trust assets."  See id. at

p. 5.  In other words, Plaintiff Luleff, as co-trustee, stood in the shoes of the Bank in all aspects

of administering the Luleff Trust.[3]

The Bank, as co-trustee for the Luleff Trust, is the only defendant here that had any

relationship with Plaintiff and indeed the Luleff trust instrument confirms this fact.  Plaintiff had

no relationship whatsoever with Bank of America Corporation ("BAC") or the other defendants,

and she has not and cannot plead otherwise.

## II.    Plaintiff Luleff As Co-Trustee Authorized the Investments She Now Challenges

---

[3]    See Insurance Co. v. Chase, 72 U.S. 509, 514 (Mem.) (1867) (co-trustees act jointly); Samuels v. E.F. Drew & Co., 7 F.2d 764, 765 (S.D.N.Y. 1924) (joint action by co-trustees required); Denny v. Guyton, 57 S.W.2d 415 (Mo. 1932); Morrison v. Asher, 361 S.W.2d 844, 852 (Mo.App. 1962) (where one co-trustee acquiesces in the improper acts of the other co-trustee, both trustees must bear the responsibility of the acts, or failure to act, of each).

In the Complaint, Plaintiff Luleff alleges a purported "Investment Policy" claiming that investment decisions for the Luleff Trust were all made at the corporate level at the Bank and that the trust officer and portfolio manager had "no real investment discretion" with respect to the Luleff Trust. See Complaint ¶22 (Exhibit 1, Messite Affidavit). However, in her role as co-trustee, **Plaintiff** was responsible for making the investment decisions for the Luleff Trust. Indeed, Plaintiff Luleff as a co-trustee had the same investment authority and fiduciary obligations as the Bank. In fact, the very same day that the Luleff Trust was established, Plaintiff made her first investment decision as the co-trustee and approved, in writing, the investment of trust assets in Columbia/Nations Funds, the Bank's affiliated mutual funds:

> I acknowledge receipt of the current prospectus for the Funds and a Nations Funds Fee Disclosure statement. As co-fiduciary for this account, I understand that the Service Providers will be paid investment advisory and other fees by the Funds. I approve the method of reducing the investment management fees paid to the Bank by the Account. I understand and agree that the Bank is not required to reduce the Account's fee on account of the compensation paid by the Funds for services other than investment advice. The Bank will supply me annually with a prospectus, which will disclose the maximum rates of compensation that the Service Providers may earn for services rendered to the Funds.
>
> Subject to any additional approval by me or others that may be needed under the terms of the trust or local law regarding co-fiduciary actions, I authorize the Bank to use any Fund described in the prospectus to further the Account's investment objectives.

See Luleff Authorization, November 9, 2001 (Exhibit 3, Messite Affidavit); Complaint ¶47 (Exhibit 1, Messite Affidavit); see also Complaint ¶44 (referencing, but not attaching the "other disclosure documents").

Luleff, nevertheless, now claims that the prospectuses and "other disclosure documents" misrepresented material facts in connection with the purchase of Nations Funds for the Luleff Trust. See Complaint ¶44. For example, she claims that these documents did not disclose that Bank affiliates provided services to the mutual funds and received compensation for such

services.  See id.  Even a cursory review of the Luleff Authorization which Plaintiff signed in

2001 demonstrates that the Bank disclosed the very facts Plaintiff claims were not disclosed:

> ### Disclosure for Investment in Nations Funds
>
> Nations Funds comprises a family of mutual funds (the "Funds") for fiduciary and non-fiduciary accounts.  We may invest assets in the Account in the Funds only with your concurrence in accordance with the Account's governing document.  We believe that investment in the Funds will provide the Account with levels of diversification and liquidity that investment in individual securities may not provide.
>
> Wholly or partially owned subsidiaries of Bank of America Corporation ("Service Providers") provide various services to the Funds, for which they are compensated.  For example, NationsBanc Advisors, Inc. is the investment advisor for each of the Funds….  In the case of certain Funds, advisors that are not subsidiaries of Bank of America Corporation provide investment sub-advisory services and, for those services, receive a portion of the advisory fees paid by those Funds.  The accompanying Nations Funds Fee Disclosure Statement and prospectuses describe the various fees paid by each Fund and identify the recipient of those fees.

See Luleff Authorization, November 9, 2001 (Exhibit 3, Messite Affidavit).  Clearly, in 2001,

Plaintiff knew that Bank affiliates received compensation for services provided to the mutual

funds and that the affiliated mutual funds charged fees.[4]

### ARGUMENT

When ruling on a Federal Civil Rule 12(b)(6) motion to dismiss, the Court may accept

only the well-pled allegations in the complaint as true.  See Assoc. Gen. Contractors of Cal., Inc.

v. Cal. State Council of Carpenters, 459 U.S. 519 (1983); Mason v. Am. Tobacco Co., 346 F.3d

---

[4]     Plaintiff also acknowledges in the Complaint that the Bank provided a trustee fee credit to the Luleff Trust after the trust assets were invested in Nations Funds.  See Complaint ¶¶26, 61; Exhibit 3, Messite Affidavit (authorizing the trustee fee credit).  Many state statutes, including Missouri, permit a trustee to invest trust assets in affiliated mutual funds and to charge both the trustee fee as well as fees in connection with the mutual fund investments.  However, although statutorily authorized to charge both levels of compensation, for trusts invested in its affiliated mutual funds, the Bank **voluntarily** provides a trustee fee credit equal to the amount of the investment advisory fee charged by the particular affiliated mutual fund.  The Luleff Trust received these trustee fee credits beginning in 2001.

36, 39 (2d Cir. 2003).  However, "legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness." U.S. v. Bonanno Organized Crime Family of La Cosa Nostra, 879 F.2d 20, 27 (2d Cir. 1989).  As outlined herein, the Complaint has numerous fundamental defects warranting dismissal.

### I.    This Court Should Decline Jurisdiction Over Plaintiff's Complaint Under the First-Filed Rule

The propriety of a forum is a threshold matter that the Court must consider before addressing the merits of an action. Adam v. Jacobs, 950 F.2d 89, 92 (2d Cir. 1991).  The first-filed rule allows a court to decline jurisdiction and dismiss a complaint that is substantially similar to another complaint that was previously filed.  Accordingly, this Court should consider whether, in light of the first-filed rule, this action is properly before it.  See 800-Flowers, Inc. v. Intercontinental Florist, Inc., 860 F.Supp. 128 (S.D.N.Y. 1994) (dismissing action under first-filed rule).  Where two courts have concurrent jurisdiction over an action involving the same parties and issues, courts will follow the first-filed rule whereby the court which first has possession of the action decides it absent a showing that the balance of convenience favors the second action. Id. (citations omitted); see also First City Nat. Bank and Trust Co. v. Simmons, 878 F.2d 76 (2d Cir. 1989) (dismissing case pursuant to the first-filed rule.); Motion Picture Lab. Technicians Local 780, I.A.T.S.E. v. McGregor, 804 F.2d 16 (2d Cir. 1986).

Based upon admissions in other court filings, the Court should apply the first-filed rule and decline jurisdiction over this case.  First, there can be no question that the action Siepel, et al. v. Bank of America, N.A., et al., 05-CV-2393 (E.D. Mo.) was filed before this case in 2005. Second, in a filing before this Court, Plaintiff admits that her action is "substantively similar" to the Siepel action.  Plaintiff further admits that the "only material difference between Luleff's Complaint and the … Siepel Complaint is the following five paragraphs relating to late trading and market timing transactions in Nations Funds." See Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Stay this Action, at p. 1, attached as Exhibit 4 to Messite Affidavit.  Indeed, the "material difference" that Plaintiff was referring to was *eliminated* by

Stipulation and Order of this Court withdrawing all allegations and claims in this action relating to market timing and late trading.

As Plaintiff admits, in both cases, the claims are predicated on investments in Nations Funds – the Bank's affiliated mutual funds – and on behalf of the same putative class as in Siepel. See Affidavit of Daniel Cobrinik, attached as Exhibit 5 to Messite Affidavit.[5]  Indeed, Plaintiff's counsel oddly filed this action in New York for a Missouri resident and then advocated for transfer and consolidation of the Luleff action with the Siepel action in an MDL proceeding in Missouri. See id.  Moreover, Plaintiff Luleff, a member of the same putative class in Siepel, admittedly has no connection to this forum – she is a resident of Missouri and the trust res at issue is located in Missouri.  Accordingly, the balance of convenience clearly favors dismissal of this action in favor of the first-filed Siepel action.

Given Plaintiff's admissions and the interest of judicial economy, this action should be dismissed and the resolution adjudicated in the forum where it was first filed. See 800-Flowers, 860 F.Supp. at 136.

## II.    SLUSA Mandates Dismissal of Plaintiff's Class Claims

In 1995, after determining that meritless and abusive private lawsuits were harming the nation's securities markets, Congress enacted the Private Securities Litigation Reform Act ("PSLRA") to impose procedural and substantive restrictions on private securities suits in federal court, including heightened pleading requirements, more rigorous standards for class representation, and strict statutes of limitations. Spencer v. Wachovia Bank, N.A., No. 05-81016, slip. op. at 3 (S.D. Fla. May 10, 2006), attached as Exhibit 6 to Messite Affidavit.[6] Seeking to avoid PSLRA's restrictions, securities class action plaintiffs began to frame their

---

[5]       The Court may take judicial notice of this affidavit.  Patrowicz v. Transamerica Homefirst, Inc., 359 F.Supp.2d 140, 144 (2d Cir. 2005) (court could take judicial notice of the pleadings, orders, and judgments in prior litigation related to the instant case.)

[6]       SLUSA prevents Plaintiff from bringing state law claims as class claims.  It does not foreclose Plaintiff from bringing individual state law claims.  Spencer v. Wachovia Bank, N.A., No. 05-81016-CIV-RYSKAMP/VITUNAC, slip op. at 16 (S.D. Fla. May 10, 2006) (citing Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,  126 S.Ct. 1503, 1514 (2006)).

allegations of securities fraud as state law causes of action and pursue relief in state court. Congress enacted the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") to close this loophole and to ensure that national, federal standards would be applied to challenges involving publicly traded securities. See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 126 S.Ct. 1503, 1511 (2006).

SLUSA provides for the immediate dismissal of certain putative class actions based on state law alleging an untrue statement or omission of a material fact made in connection with the purchase or sale of a covered security. See Felton v. Morgan Stanley Dean Witter & Co., 429 F.Supp.2d 684, 690, 692 (S.D.N.Y. 2006) (holding that dismissal on SLUSA grounds appropriate where plaintiff's claim is a "securities fraud wolf dressed up in a breach of contract sheep's clothing."). Preemption and dismissal under SLUSA is appropriate for any claim that meets four criteria: (1) the action is a "covered class action" under SLUSA, (2) the action purports to be based on state law, (3) the defendant is alleged to have misrepresented or omitted a material fact (or to have used or employed any manipulative or deceptive device or contrivance), and (4) the defendant's alleged misrepresentation or omission of a material fact was made "in connection with" the purchase or sale of a "covered security." See id. at 690-691 (citing Dabit, 126 S. Ct. at 1511-12); 15 U.S.C. § 78bb(f)(1)-(2).

The court must focus on the substance of Plaintiff's allegations and be wary of efforts to circumvent SLUSA through artful pleading. See Felton, 429 F.Supp.2d at 692-693. The presence or absence of a key word is not determinative of SLUSA's applicability, but rather whether a reasonable reading of the complaint reveals allegations generally within SLUSA's purview. See Rowinski v. Salomon Smith Barney, Inc., 398 F.3d 294, 304 (3d Cir. 2005). When the "gravamen" of the complaint involves an untrue statement or omission of a material fact, and when that conduct coincides with a transaction involving a covered security, SLUSA mandates dismissal. See SEC v. Zandford, 535 U.S. 813, 819 (2002). In this case, Plaintiff's efforts to circumvent SLUSA through artful pleading are obvious. The state law claims are preempted and should be dismissed. Spencer, slip op. at 1-13 (Exhibit 6, Messite Affidavit).

### A.      Plaintiff alleges a covered class action.

Under SLUSA, a "covered class action" is a lawsuit in which "[d]amages are sought on behalf of a class of more than 50 persons or prospective class members . . . ." 15 U.S.C. §§ 78bb(f)(5)(B)(i)(I); 77p(f)(2)(A)(i)(I). Here, Plaintiff purports to bring various state law claims on behalf of a nationwide class of "many thousands" of beneficiaries. See Complaint ¶¶51-56 (Exhibit 1, Messite Affidavit). Plaintiff's lawsuit meets SLUSA's definition of a covered class action.

### B.      Plaintiff's claims are founded on state law.

Plaintiff's claims are also clearly founded on state law, as she asserts state law claims for breach of fiduciary duty, breach of contract and unjust enrichment. See id. at ¶¶65-72. See also Spencer, slip op. at 4-5 (concluding same claims raised herein involved state law claims).

### C.      The core allegations in Plaintiff's Complaint are that Defendants misrepresented or omitted material facts.

On its face, Plaintiff's Complaint alleges that Defendants misrepresented and omitted key material facts. Plaintiff's Complaint centers on the singular theme that Defendants invested trust assets and other financial assets in Nations Funds through certain misrepresentations and omissions about the value of those investments, purported conflicts of interest and the related fees and expenses. Plaintiff's numerous allegations of misrepresentation and omission include a section of the Complaint devoted to **"Defendants' Failure to Make Full and Fair Disclosure"** which includes among other allegations:

> Notwithstanding their fiduciary obligation of full and fair disclosure, NFT, the Bank and BAC sent plaintiff, other co-fiduciaries and members of the Class deceptive Nations Funds prospectuses and other "disclosure documents" which *concealed material facts* regarding the Bank's purchase of shares in Nations Funds for fiduciary accounts. In particular, those documents *failed to disclose* (1) that the Nations Funds had higher expense ratios than other comparable mutual funds …

Complaint, ¶44 (emphasis added); see also id. at ¶¶21(c), 44-50 (alleging duty of disclosure and further non-disclosures). Plaintiff repeatedly alleges non-disclosures and omissions concerning

all aspects of the mutual fund investments, including alleged misstatements and omissions in the mutual fund prospectuses and other disclosure documents. Id. at ¶¶44-50.

The disclosure of fees associated with mutual fund investments is an area comprehensively regulated by federal securities laws and thus is precisely the type of action which SLUSA was intended to pre-empt. See Press v. Quick & Reilly, Inc., 218 F.3d 121, 131-32 (2d Cir. 2000). In cases like this where Plaintiff attempts to conceal claims based on the misrepresentation or omission of material facts using state law labels, courts in this Circuit have disregarded these labels and dismissed the claims as preempted by SLUSA. See, e.g., Felton, 429 F.Supp.2d at 692-694; Kingdom 5-KR-41, LTD. v. Star Cruises PLC, No. 01 Civ. 2946, 2004 WL 444554 at *3 (S.D.N.Y. March 10, 2004).

In Spencer, precisely as in this action, the plaintiff alleged that Wachovia, the trustee, by investing trust assets in affiliated mutual funds – Evergreen Funds – without disclosing that such funds were affiliated with Wachovia, and by allegedly charging undisclosed and excessive fees against the trust assets in relation to these funds, engaged in self-dealing in breach of its duty of loyalty to trust beneficiaries. Slip op. at 1-2 (Exhibit 6, Messite Affidavit). In trying to avoid SLUSA preemption, the plaintiff in Spencer argued that her claim was for breach of fiduciary duty and was not predicated on misrepresentations or omissions (Id. at 5) – no doubt the same argument Plaintiff will raise here. In rejecting these arguments in Spencer, the Court noted that the Complaint is "replete with claims of misrepresentation." Id. at 7. The Court went on to quote allegations from the Spencer Complaint that are present in Plaintiff's Complaint here. Cf. Complaint ¶¶ 21, 44-50 (Exhibit 1, Messite Affidavit) with Spencer, slip op. at 1-2, 8-9 (Exhibit 6, Messite Affidavit). As in Spencer, the "gravamen" of the Amended Complaint is one of misrepresentation and omission.

### D.    *Plaintiff's claims are in connection with the purchase of a covered security.*

*1. Plaintiff's claims involve a covered security.* There is no dispute given Plaintiff's securities laws claims that Nations Funds are "covered" securities, which are defined as securities that satisfy the standards of the Securities Act of 1933, Sections 18(b)(1) and (b)(2),

including "those securit[ies] issued by an investment company that is registered, or that has filed a registration statement, under the Investment Company Act of 1940." See 15 U.S.C. §§ 77p(f)(3), 77r(b); Spencer, slip op. at 5; see also Felton, 429 F.Supp. 2d at 691; Dabit, 126 S.Ct. at 1512; Lander v. Hartford Life & Annuity Ins. Co., 251 F.3d 101, 108-109 (2d Cir. 2001).

   **2. The "in connection with" requirement is met in this case.**  The Supreme Court has given a broad interpretation to the phrase "in connection with" and has held that this language is to be construed "not technically and restrictively, but flexibly to effectuate its remedial purpose," which is "to achieve a high standard of business ethics in the securities industry." Zandford, 535 U.S. at 819; see also Dabit, 126 S.Ct. 1503, 1513 (citing Super. of Ins. of N.Y. v. Bankers Life & Cas. Co., 404 U.S. 6 (1971)).  In Merrill Lynch, the Supreme Court recently affirmed that the traditional broad interpretation that has been given to this language extends to the "in connection with" phrase as it is used in SLUSA.  Specifically, the Supreme Court held that "it is enough that the fraud alleged 'coincide' with a securities transaction—whether by the plaintiff or by someone else." See 126 S.Ct. at 1513.  "The requisite showing, in other words, is 'deception "in connection with the purchase or sale of any security," not deception of an identifiable purchaser or seller.'" Id. (citations omitted).

   Relying on this interpretation, the Court in Spencer dismissed similar state law claims on SLUSA grounds.  Precisely as in this case, in Spencer, the plaintiff asserted state law class claims for breach of fiduciary duty and unjust enrichment against Wachovia.  See Spencer, No. 05-81016, slip op. at 1-2.  (Exhibit 6, Messite Affidavit).[7]  After finding that the other requirements of SLUSA were met, the court in Spencer addressed the "in connection with" requirement for SLUSA preemption.  The court reasoned that the plaintiff was essentially alleging that Wachovia misled trust beneficiaries about its investment in affiliated funds and the

_____

[7]     The Spencer plaintiff alleged that Wachovia, among other things, (1) violated state law by investing trust assets in affiliated funds, (2) failed to disclose certain material information relating to the investment in the affiliated funds, and (3) "devised a scheme to maximize its profits by forcing the irrevocable trusts to invest in the Evergreen Funds whether or not such investments were in the best interests of the trusts."  See id.  The allegations in Spencer track those in this case.

expenses associated with those transactions.  See id. at 12-13.  Because Wachovia's conduct was premised on, and furthered by, the purchase of the affiliated mutual funds, the court held that the plaintiff's state law claims were "in connection with" the purchase of the shares of the affiliated funds.  See id. at 13.  The court in Spencer, therefore, held that SLUSA preempted plaintiff's state law class claims.

Spencer is squarely on point with this case.  Plaintiff here alleges what amounts to a scheme to mislead fiduciary customers about the Columbia/Nations Funds investments.  See Complaint ¶¶2-4, 8, 22-23, 25-32, 38, 44-50, 65-72 (Exhibit 1, Messite Affidavit).  The allegations and claims are premised on, and were allegedly furthered by, the purchase of shares of affiliated mutual funds for the Luleff Trust.  As such, Plaintiff's state law claims are "in connection with" a securities transaction and are preempted by SLUSA.  Precisely as the Court in Spencer ruled, all requirements for SLUSA preemption have been met here and, accordingly, the state law class claims in the Complaint must be dismissed.

**III.  As This Court Recently Confirmed, Plaintiff's Claims Are Barred As a Matter of Law Because Plaintiff Ratified and Consented to the Investments She Challenges**

In a case raising the very same claims, this Court recently granted the defendant bank/trustee's motion to dismiss.  Hughes v. LaSalle Bank, N.A., 419 F.Supp. 2d 605 (S.D.N.Y. 2006); reconsideration denied, 2006 U.S. Dist. LEXIS 48268 (July 14, 2006).  Plaintiff's counsel herein was counsel in that action.  Specifically, in LaSalle, the plaintiffs raised similar claims against LaSalle Bank for breach of fiduciary duty and unjust enrichment in connection with investment of trust assets in LaSalle Bank's affiliated mutual funds.  Judge Mukasey granted the defendants' motion to dismiss, holding, among other things, that where the beneficiary had notice and consented to investments in affiliated mutual funds and did nothing to disaffirm, the conduct was ratified and her claims were barred.  See id at 618.  This case presents an even stronger basis for dismissal on the same grounds.

As an initial matter, as in <u>LaSalle</u>, a choice of law analysis is required to determine the applicable state law for each of Plaintiff's claims.[8] "Where jurisdiction rests upon diversity of citizenship, a federal court sitting in New York must apply the New York choice-of-law rules." <u>Stuart v. Am. Cyanamid Co.</u>, 158 F.3d 622, 626 (2d Cir. 1998).

## A.   *Substantive Choice-of-Law Analysis Results in Application of Missouri Law.*

A federal district court sitting in diversity will use the choice of law rules of its forum state to determine applicable law. <u>American Home Assur. Co. v. Merck & Co., Inc.</u>, 329 F.Supp.2d 436 (S.D.N.Y. 2004). Thus, this Court should apply New York's choice of law analysis to determine which state law is applicable to each of Plaintiff's state law claims.

In tort cases or actions involving "conduct regulation" such as claims for breach of fiduciary duty and unjust enrichment (Counts I and III), New York courts apply the "law of the state with the most significant interest in the litigation." <u>Lee v. Bankers Trust Co.</u>, 166 F.3d 540, 545 (2d Cir. 1999) (citation omitted). The purpose of this "interest analysis" is "to determine which of two competing jurisdictions has the greater interest in having its law applied in the litigation." <u>Padula v. Lilarn Prop. Corp.</u>, 84 N.Y.2d 519, 521 (1994). Under this analysis, the significant contacts are usually the parties' domiciles and the location where the tort was committed. <u>AroChem Int'l, Inc. v. Buirkle</u>, 968 F.2d 266, 270 (2d Cir. 1992); <u>Schultz v. Boy Scouts of Am., Inc.</u>, 65 N.Y.2d 189 (1985). Where, as here, the parties are domiciled in different states, the state in which the conduct took place has the greatest interest. <u>Krock v. Lipsay</u>, 97 F.3d 640, 646 (2d Cir. 1996); <u>see also</u> <u>Lee</u>, 166 F.3d at 545 (conduct regulating rules usually require application of law of place of tort).

Unfortunately, the Complaint lacks any specific references to which state law is applicable to any of Plaintiff's claims. Indeed, Plaintiff vaguely alleges that her claims are brought "pursuant to state statutes and common law." <u>See</u> Complaint ¶9. Plaintiff is a resident

---

[8]   The choice-of-law analysis demonstrates how unmanageable this action is as a putative class action. <u>See, e.g.</u>, <u>Kaczmarek v. Int'l Bus. Machs. Corp.</u>, 186 F.R.D. 307, 312-13 (S.D.N.Y.1999) (finding that state by state variations overwhelmed any common issues and required denial of class certification).

of Missouri and the trust res for which she and the Bank shared fiduciary responsibility is located in Missouri. Neither Plaintiff nor the Luleff Trust has any connection to New York, and Plaintiff does not plead otherwise in the Complaint. Presumably Plaintiff's claims spring from the administration of the Luleff Trust and under New York's "interest analysis," Missouri law applies to Plaintiff's state law claims for breach of fiduciary duty and unjust enrichment.[9]

In contract actions, New York applies the "center of gravity" or "grouping of contacts" theory of conflicts of laws. See Maryland Cas. Co. v. Continental Cas. Co., 332 F.3d 145 (2d Cir. 2003). Stated differently, New York courts apply "the law of the place which has the most significant contacts with the matter in dispute." Id. at 151 (citations omitted). Relying on §188 of the Restatement (Second) of Conflict of Laws, the New York Court of Appeals has identified five factors relevant in determining which state has the "most significant relationship" to a contract dispute: (1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile or place of business of the contracting parties. See generally Zurich Ins. Co. v. Shearson Lehman Hutton, Inc., 84 N.Y.2d 309, 317 (1994).

Applying this "center of gravity" analysis here also results in the application of Missouri law to the contract claim. Although Plaintiff fails to specify the existence of any contract with the Bank or BAC, the only written agreement which defined any relationship with the Plaintiff is the trust instrument creating the Luleff Trust. See Exhibit 2, Messite Affidavit. The Luleff Trust was created pursuant to a Missouri state court order resulting from a settlement of a civil action and which named the Bank as the corporate co-trustee. Accordingly, this Court should apply Missouri law to Plaintiff's breach of contract claim.

### B.   Based on _LaSalle_ and Missouri Law, Plaintiff's Claims are Barred.

This case presents an even stronger case of consent and ratification than the LaSalle case given that Plaintiff is a co-trustee for the Luleff Trust. See Complaint ¶14. Where a trust

---

[9]      As to BAC, North Carolina law could also to apply to Plaintiff's claims; however, the result would be the same whether Missouri or North Carolina law is applied here.

instrument vests the administration of a trust in co-trustees and the powers vested by the trust instrument are undivided, the co-trustees <u>cannot</u> act separately unless separate authority is given by statute or the trust instrument. <u>See</u> <u>Insurance Co. v. Chase</u>, 72 U.S. 509, 514 (Mem.) (1867) ("[I]n the administration of the trust, where there is more than one trustee, all must concur, but the entire body can direct one ... to transact business, which it may be inconvenient for the others to perform, and the acts of the one thus authorized, are the acts of all, and binding on all."); <u>see also</u> <u>Samuels v. E.F. Drew & Co.</u>, 7 F.2d 764, 765 (S.D.N.Y. 1924) (noting that requiring joint action by joint trustees provides security and prevents "the hazard of double error and of discordant management"). The investments Plaintiff challenges could never have been made without her explicit authorization and consent.

Indeed, under Missouri law, where a co-trustee consents or concurs in a purported breach of trust, she is precluded from seeking redress against the trustee and she is jointly and severally liable for the act. <u>See</u> <u>Denny v. Guyton</u>, 57 S.W.2d 415 (Mo. 1932); <u>Morrison v. Asher</u>, 361 S.W.2d 844, 852 (Mo.App. 1962) (where one co-trustee acquiesces in the improper acts of the other co-trustee, both trustees must bear the responsibility of the acts, or failure to act, of each). Moreover, a co-trustee is responsible for "omissions-breaches of trust-of his co-trustee to which he consented, or which by his own negligence he made possible for his co-trustee to commit." <u>In re Estate of Chrisman</u>, 746 S.W.2d 131, 135 (Mo.App.1988) (quoting <u>Walker v. James</u>, 85 S.W.2d 876, 884 (Mo. 1935)).

In <u>LaSalle</u>, the Court held that a trust beneficiary who ratifies the acts of her trustee through her later conduct cannot hold that trustee liable. <u>See</u> <u>LaSalle</u>, 419 F.Supp.2d at 619-620. The Court further noted that the beneficiary could not escape such ratification by claiming that she was not advised of certain material facts. <u>Id</u>. When a competent beneficiary or trustee consents to a transaction, she cannot thereafter seek redress against the trustee even though the transaction may otherwise be a breach of trust. <u>See</u> <u>Scullin v. Clark</u>, 242 S.W.2d 542, 548 (Mo. 1951) (precluding beneficiary who also served as co-trustee from challenging act which as co-trustee she had previously consented to, confirmed, and ratified). As in <u>LaSalle</u>, Plaintiff Luleff

clearly knew in 2001 that the investment in affiliated mutual funds charged fees, including fees paid to the Bank's affiliates and she consented to such investments. See Exhibit 3, Messite Affidavit. Further, for five years, she did nothing to challenge this conduct. Following the decision in LaSalle and Missouri law, Plaintiff has not only authorized and consented to the conduct, but also ratified it. Accordingly, her claims are barred as a matter of law.

### IV.   Plaintiff's Claims Fail Because Neither She Nor the Trust Has Suffered Any Loss

Plaintiff fails to state a claim because she has failed to plead that she or the trust has suffered any loss as a result of the investments in affiliated mutual funds. She complains only that Defendants made money from "increased fees and expenses" to the Luleff Trust as a result of investments in affiliated mutual funds – not that the Luleff Trust depreciated in value or lost money in any way from the investments in affiliated mutual funds. See Complaint ¶¶ 25-29, 31-32, 39-41, 44, and 61 (Exhibit 1, Messite Affidavit). On this basis alone, her claims should be dismissed. See Spencer, slip op. at 13-14 (Exhibit 6, Messite Affidavit) (holding that plaintiff failed to state a claim where she failed to allege that there was any loss or depreciation of the trust's value as a result of the affiliated mutual fund investments).

Telling is that in the *eight* actions filed by the same consortium of plaintiffs' counsel, plaintiffs have been unable to articulate any losses. Indeed, in dismissing one case after nearly two years of discovery, the court held that plaintiffs did not have a "scintilla of evidence" to establish any losses resulting from the alleged breaches. See Kutten v. Bank of America, 04-CV-244 slip. op. at p. 4, (E.D. Mo. May 26, 2006) (Exhibit 7, Messite Affidavit). Because there is no claimed loss here, Plaintiff Luleff has no damages to recover in this action and has failed to state a claim. See Spencer, slip op. at 13-14; see, e.g., Estate of Gump v. Wells Fargo, 128 Cal.App.3d 111, 180 Cal. Rptr. 219 (1982) (trustee cannot be held liable where the trust beneficiaries suffered no loss); In re McCune, 705 A.2d 861, 865 (Pa. Super. 1997).

### V.   Plaintiff's Claim For Breach of Fiduciary Duty Is Time-Barred and Fails to State a Claim As a Matter of Law

In Count I, Plaintiff vaguely asserts in one sentence that "by virtue of the foregoing breach of their fiduciary obligations, defendants caused damages to plaintiff..." See Complaint ¶66. The Bank is the only defendant with any fiduciary relationship with Plaintiff, however, without offering a single specific, supporting fact, Plaintiff alleges that other defendants "aided and abetted" this alleged breach. Id. at ¶ 42. Plaintiff's claim is barred by the applicable statute of limitations. Even if not barred by limitations, Plaintiff has failed to state a claim upon which relief can be granted because the alleged improper conduct that forms the basis for her claims – the investment in Nations Funds and the collection of fees – was expressly authorized by state law and the trust instrument.

### A.   New York's Procedural Choice-of-Law Analysis for Statute of Limitations Bars Plaintiff's Breach of Fiduciary Duty Claim.

"New York procedural law is applied to determine the applicable statute of limitations, because, where jurisdiction rests upon diversity of citizenship, a federal court in New York must apply the New York choice-of-law rules and statutes of limitations." Hughes v. LaSalle Bank, N.A., 419 F.Supp.2d 605, 611 (S.D.N.Y. 2006). Under N.Y. C.P.L.R. § 202, the claims of a plaintiff who is not a New York domiciliary are time-barred if they are untimely under the shorter of either the New York's limitation period or the limitation period of the jurisdiction where the cause of action accrued. N.Y. C.P.L.R. § 202 (McKinney 2001); see also LaSalle, 419 F.Supp.2d at 611 ("Generally, New York courts apply New York's statute of limitations, even when the injury giving rise to the claims occurred outside New York.").

"Under N.Y. C.P.L.R. § 202, when an alleged injury is purely economic, the place of injury is usually where the plaintiff resides and sustains the economic impact of the loss. Barring 'unusual circumstances,' the economic impact is felt in the state of the plaintiff's residence." Id. Plaintiff is a resident of Missouri and thus her claims will be governed by the shorter of the limitations periods of Missouri and New York. With respect to a claim for breach of fiduciary duty, the statute of limitations in Missouri is five years, while in New York it is three years when monetary relief is sought and six years when equitable relief is sought. See Mo. Rev. Stat. § 516.120(4); LaSalle, 419 F.Supp.2d at 612. Accordingly, with respect to Plaintiff's claim for

breach of fiduciary duty seeking economic relief, the applicable statute of limitations is three years.

In support of her breach of fiduciary duty claim, Plaintiff pleads that the Bank had an alleged "Investment Policy" involving the Bank's affiliated mutual funds which began "sometime prior to 2000." See Complaint ¶¶2, 22 (Exhibit 1, Messite Affidavit). Nearly a third of Plaintiff's Complaint is devoted to allegations involving this pre-2000 "Investment Policy" yet Plaintiff waited until February 2006 to file the instant complaint. See id. ¶¶ 2-4, 8, 22-23, 25-32, 38, 45-46, 57, 60. Indeed, Plaintiff alleges that she was notified "beginning in or about February 2000, if not earlier" of the "conversion" of trust assets to Nations Funds. See id. ¶46. Moreover, in 2001, Plaintiff not only knew that the assets of the Luleff Trust were invested in Nations Funds, but indeed, she **authorized** such investments. See Exhibit 3, Messite Affidavit. Plaintiff has clearly missed the three year statute of limitations, and as in LaSalle, Plaintiff's claims are clearly time-barred.

### B.    There Can Be No Breach of Fiduciary Duty Where the Trustee Complied With the Terms of the Trust Instrument and State Law.

As noted above, the Luleff trust instrument unambiguously conferred upon the Bank and Plaintiff as co-trustees broad investment authority to invest assets of the Luleff Trust. See Exhibit 2 at pp. 11-12, Messite Affidavit. Importantly, the trust instrument does not prohibit the use of affiliated mutual funds as investments in the Luleff Trust and Plaintiff has not and cannot allege otherwise.

Under Missouri's Prudent Investor Rule, Defendants cannot be held liable for breach of fiduciary duty (or for breach of contract for that matter) where the trust instrument permits the challenged conduct. See Mo. Rev. Stat. § 469.901. 2. "A trustee is not liable to a beneficiary for the trustee's good faith reliance on these express provisions." Id.

Here, the Bank as well as Plaintiff did nothing contrary or in breach of the terms of the trust instrument in investing the trust assets in affiliated mutual funds. Further, as a result of these investments, the Bank discounted its trustee fee. Under these circumstances, the Bank complied with the terms of the trust instrument. Plaintiff does not have a claim here. Id.; see

First National Bank of Kansas City v. Hyde, 363 S.W.2d 647, 655 (Mo. 1962) (When a trustee is

granted such discretion by the trust document, that discretion "is not subject to control by the

court, except to prevent an abuse by the trustee of his discretion.").

     Moreover, the Bank did not breach its fiduciary duty because Missouri law specifically

allows the trustee to invest trust assets in affiliated mutual funds.  Indeed, under Missouri law, it

is not considered actionable or self-dealing for a bank/trustee to invest trust assets in affiliated

mutual funds.  Specifically, Missouri Law provides as follows:

> Notwithstanding any other provisions of law to the contrary, a bank, trust
> company or affiliate thereof, when acting as a trustee, investment advisor,
> custodian, or otherwise in a fiduciary capacity with respect to the investment and
> reinvestment of assets may invest and reinvest the assets, subject to the standards
> contained in section 456.520, RSMo., in the securities of any open-end or closed-
> end management investment company or investment trust registered pursuant to
> the federal Investment Company Act of 1940 as amended (15 U.S.C. Sections
> 80a-1, et seq.) (collectively "mutual funds").  Such investment and reinvestment
> of assets may be made notwithstanding that such bank, trust company or affiliate
> provides services to the investment company or trust as investment advisor,
> sponsor, distributor, custodian, transfer agent, registrar, or otherwise, and receives
> reasonable remuneration for such services.  Such bank or trust company or
> affiliate thereof is entitled to receive fiduciary fees with respect to such assets.
> For such services the bank or trust company or affiliate thereof shall be entitled
> only to the normal fiduciary fee but neither a bank, trust company nor affiliate
> shall be required to reduce or waive its compensation for services provided in
> connection with the investment and management of assets because the fiduciary
> invests, reinvests or retains assets in a mutual fund.  The provisions of this
> subsection apply to any trust, advisory, custody or other fiduciary relationship
> established before or after August 28, 1999, unless the governing instrument
> refers to this section and provides otherwise.

Mo. Ann. Stat. § 362.550 (11).  Additionally, the Missouri Prudent Investor Act specifically

provides a safe harbor for a trustee investing trust assets as authorized by Missouri law:

> The general assembly recognizes that persons, corporations, entities or state
> agencies who have responsibility for investing funds may be subject to a standard
> that is specifically set forth in other statutes.  Under such circumstances, such
> persons, corporations, entities or state agencies shall comply with the standard of
> investment set forth in the other statute, and this act shall not modify or repeal that
> standard.

Mo. Ann. Stat. § 469.913.

     The Bank did not breach any duty – nor did Plaintiff as co-trustee – where it followed the

law and the terms of the trust instrument.  See Hughes v. LaSalle Bank, 2006 U.S. Dist. Lexis

48268, at *12 (July 14, 2006) (trustee did not engage in self-dealing where its investments in affiliated mutual funds were authorized by law). Count I should be dismissed.

**VI.    Because No Term of the Contract Has Been Breached and Because the Law Authorized the Bank's Conduct, Plaintiff's Breach of Contract Claim Fails to State a Claim**

In Count II, Plaintiff appears to allege that the Bank, and only the Bank, breached certain contractual obligations in its role as co-trustee for the Luleff Trust. See Complaint ¶68 (Exhibit 1, Messite Affidavit). Indeed, there are no allegations of a contract between Plaintiff and BAC because there is none. The only written agreement that defines the relationship Plaintiff had with the Bank is the trust instrument creating the Luleff Trust. See Exhibit 2, Messite Affidavit. Notably, Plaintiff does not point to any provision in the trust instrument which the Bank failed to follow. Under Missouri law, the requisite elements for a breach of contract action are: (1) the existence of an enforceable contract between the parties; (2) mutual obligations arising under the contract terms; (3) defendant's failure to perform the obligations imposed by the contract; and (4) resulting damage. See Trotter's Corp. v. Ringleader Restaurants, Inc., 929 S.W.2d 935, 941 (Mo. Ct. App. 1996). Here, Plaintiff does not allege the existence of a valid contract nor the terms of the contract which establish the obligation at issue. See Volker Court, LLC v. Santa Fe Apartments, LLC, 130 S.W.3d 607, 611 (Mo. Ct. App. 2004). On this basis alone, her breach of contract claim should be dismissed.

Moreover, Section 197 of the Restatement (Second) of Trusts essentially prohibits common law claims for breach of contract by beneficiaries against trustees: "Except as stated in § 198, the remedies of the beneficiary against the trustee are exclusively equitable." The comments to § 197 are even more explicit in prohibiting breach of contract claims against a trustee:

> *(b) Breach of Contract.* A trustee who fails to perform his duties as trustee is not liable to the beneficiary for breach of contract in the common-law actions of special assumpsit or covenant or in a similar action at law in State in which the common-law forms of action have been abolished. ***The creation of a trust is conceived of as a conveyance of the beneficial interest in the trust property rather than as a contract.*** Moreover, questions of the administration of trusts have always been regarded as of a kind which can adequately be dealt with in a suit in equity rather than in an action at law, where questions of fact would be determined by a jury and not by the court. The mere fact that there may happen to

be a promise in words by the trustee to perform the trust does not give common-law courts concurrent jurisdiction over the administration of the trust.

*The trustee by accepting the trust and agreeing to perform his duties as trustee does not make a contract to perform the trust enforceable in an action at law.* The trustee may by contract undertake other duties than those which he undertakes as trustee, and if he does so he will be liable in an action at law for failure to perform such duties.

Restatement (Second) of Trusts § 197 cmt b. (1959) (emphasis added).

Further, Plaintiff's claim deviates from the cardinal rule for the construction of trusts -- that the settlor's intent is controlling. See Boatmen's Trust Co. v. Sugden, 827 S.W.2d 249, 253-254 (Mo. App. 1992) ("We must adhere to the clear language contained in the trust instruments and not alter our position because of the result that occurs."). Here, the trust instrument provides broad discretionary investment authority and Missouri law permits trust assets to be invested in affiliated mutual funds. Accordingly, because Plaintiff cannot bring a breach of contract claim based on the trust instrument and, moreover, because Plaintiff has not pled any of the requisite elements for a breach of contract claim, including the existence of a valid contract, Count II should be dismissed.

Plaintiff has also failed to sufficiently plead that either she or her daughter are intended third-party beneficiaries to any contract. Plaintiff baldly alleges that her daughter is a third-party beneficiary of "NFT's investment management contracts with the other Defendants" merely because she was a beneficiary of a trust account for which the Bank served as a co-trustee. See Complaint ¶19 (Exhibit 1, Messite Affidavit). Further, Plaintiff alleges that she and "other members of the putative Class are third party beneficiaries of the Consent Agreement between the Comptroller of the Currency and the Bank." See Complaint ¶49.

Standing as a third-party beneficiary is a threshold requirement, without which a court has no power to grant the relief requested. In the Matter of Estate of Scott, 913 S.W.2d 104, 105 (Mo.App. E.D. 1995) (citations omitted). Under Missouri law, "[O]nly those third parties for whose primary benefit the contracting parties intended to make the contract may sue on the contract." Id. (citations omitted). Although the contract does not necessarily have to name the third-party beneficiary, the terms of the contract must "directly and clearly express an intent to

benefit an identifiable person or class." See OFW Corp. v. City of Columbia, 893 S.W.2d 876, 879 (Mo.App. W.D. 1995).

Plaintiff fails to attach any of these contracts or agreements to her Complaint or reference any specific provisions which "directly and clearly express an intent to benefit" her or her daughter.  Accordingly, Plaintiff lacks standing to assert any breach of contract claims based on third-party beneficiary status and dismissal is proper.

### VII.   Plaintiff's Claim For Unjust Enrichment Fails As a Matter of Law Because No Benefit to Defendants Was Improper or Unjust Here

To state a claim for unjust enrichment, Plaintiff must plead that any benefit conferred was, in fact, unjustly retained.  See, e.g., William D. Graves d/b/a Graves Construction v. Jerry Berkowitz, et al., 15 S.W.3d 59, 61 (Mo. App. 2000) ("'Mere receipt of benefits' is not enough when there is no showing that it would be unjust for defendant to retain the benefit received."). "In determining whether it would be unjust for the defendant to retain the benefit, courts consider whether any wrongful conduct by the defendant contributed to the plaintiff's disadvantage." S&J, Inc. v. McLoud & Co., 108 S.W.3d 765, 768 (Mo. App. 2003); see also Rolla Lumber Co. v. Evans, 482 S.W.2d 519 (Mo. App. 1972) (suggesting that a claim for unjust enrichment can be based "only on an element of misconduct or fault or undue advantage taken by one party of another.").

Where the trust instrument, Missouri law and indeed, Plaintiff herself, authorized the challenged investments and the fees assessed by the trustee, it is inconceivable that any benefit obtained by the Bank was "unjust."  See S&J, Inc., 108 S.W. 3d at 768 (where nothing in the record indicated that defendant engaged in any wrongful conduct, a claim for unjust enrichment fails); see also Van de Kamp v. Bank of America, 204 Cal. App. 3d 819, 855 (1988) (no unjust enrichment where defendant bank derived profit from the use of plaintiff's trust funds in a manner consistent with the Probate Code and Financial Code).  In this case, there was no unjust benefit conferred upon the Bank or BAC by Plaintiff or the Luleff Trust.  Accordingly, Plaintiff cannot plead a claim for unjust enrichment as a matter of law, and Count III should be dismissed.

### VIII.   Plaintiff Lacks Standing to Seek Injunctive Relief

- 22 -

Two courts in two other cases brought against Bank of America raising similar allegations have already confirmed that Plaintiff lacks standing to seek injunctive relief here. Reinke v. Bank of America, No. 04-CV-1758, 2005 WL 3454428, at *4 (E.D. Mo. Dec. 16, 2005) (dismissing complaint and holding that because plaintiffs were no longer trust customers, they lacked standing to request injunctive relief); Kutten v. Bank of America, No. 04-CV-244, slip. op. at p. 7 (same) (Exhibit 7, Messite Affidavit).

As a threshold question, a federal court must rule on whether a plaintiff has standing to sue. Warth v. Seldin, 422 U.S. 490, 498 (1975); Board of Education of the Mount Sinai Union Free School District v. New York State Teachers Retirement System, 60 F.3d 106 (2d Cir. 1995). The plaintiff bears the burden to establish standing. See City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983). The three-prong analysis for standing requires an injury in fact that is concrete and particularized, and actual or imminent causal connection between the injury and the challenged action; and the likelihood, not mere speculation, that a favorable decision will redress the injury. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992) (injury may not be conjectural or hypothetical); Matthew Lee, et al. v. Board of Governors of the Federal Reserve System, et al., 118 F.3d 905, 910 (2d Cir. 1997). "In a complaint seeking injunctive relief, the 'injury in fact' element requires the plaintiff to show that s/he faces a threat of ongoing or future harm." Reinke, 2005 WL 3454428, at *4; see also City of Los Angeles, 461 U.S. at 111 (plaintiff's injury was too speculative to convey standing to obtain an injunction); Burns v. Warwick Valley Central School Dist., 166 F. Supp.2d 881, 888 (S.D.N.Y. 2001) ("A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement, but must show a likelihood that he or she will be injured in the future.")

There can be no dispute that Plaintiff Luleff's relationship with the Bank terminated in 2005, and as a result, there is no threat to her or the Luleff Trust of on-going harm. See Exhibit 8, Messite Affidavit. Accordingly, Plaintiff lacks standing to obtain injunctive relief. See Kutten, No. 04-CV-244, slip. op. at p. 7; Reinke, 2005 WL 3454428 at *4.

### IX. Because Neither Plaintiff Nor the Luleff Trust Had Any Kind of Relationship With BAC, All Claims Against BAC Should Be Dismissed

As Plaintiff admits, BAC is a holding company.  <u>See</u> Complaint ¶15.  She has not and cannot plead that she had any relationship, fiduciary, contractual or otherwise with BAC because neither she nor the Luleff Trust did.  Defendants respectfully join in the arguments in Sections III – V in Nations Funds and Mr. Carmichael's memorandum in support of their motion to dismiss because Plaintiff has not stated a claim against BAC.  Counts I and II fail because there is no relationship with BAC here to sustain any claims against BAC as a matter of law.  Further, Plaintiff has not plead that she or the Luleff Trust provided any benefit, unjust or otherwise, to BAC to state a claim in Count III for unjust enrichment.  For these independent reasons, the claims against BAC should be dismissed.

## CONCLUSION

Because Plaintiff's claims are preempted, because Plaintiff authorized and consented to the actions she challenges here, because she pleads no loss and for the many other reasons argued above, Bank of America, N.A. and Bank of America Corporation respectfully request that this Court grant their motion to dismiss and dismiss Plaintiff's Complaint in its entirety and with prejudice.

Dated:  July 28, 2006

REED SMITH LLP

By: *Andrew B. Messite*
Andrew B. Messite (ABM-3748)
599 Lexington Avenue, 29th Floor
New York, NY  10022
Telephone:  212.521.5400
Facsimile:  212.521.5450

and

REED SMITH LLP
Gregory B. Jordan
Mary J. Hackett
Sharon L. Rusnak
435 Sixth Avenue
Pittsburgh, PA  15219
Telephone:  412.288.3131
Facsimile:  412.288.3063

- 24 -

Attorneys for Defendants
Bank of America, N.A. and
Bank of America, Corporation