DANIEL COBRINIK
Attorney for Plaintiff and the Class
2 Grand Central Tower
140 East 45th Street – 25th Floor
New York, New York 10017
(212) 725-6888
Facsimile (212) 725-6918

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
DAWNE LULEFF on behalf of her minor
daughter DESIRE COBBLE and all
others similarly situated,

                              Case No. 06-CV-1435 (JGK)

              Plaintiff,

      -against-                  JURY TRIAL DEMANDED

BANK OF AMERICA, N.A.;
COLUMBIA FUNDS SERIES TRUST
f/k/a/ NATIONS FUNDS TRUST;           CLASS ACTION
WILLIAM P. CARMICHAEL and BANK
OF AMERICA CORPORATION,

              Defendants.
------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO BANK OF AMERICA'S
MOTION TO DISMISS**

# Table of Contents

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . 1

1.  The Claims Alleged in the Complaint  . . . . . . . . . . . 1

2.  Defendants' Motion to Dismiss  . . . . . . . . . . . . . . 3

FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

1.  Standard of Review . . . . . . . . . . . . . . . . . . . . 9

2.  Desire's Claims Are Not Time-Barred  . . . . . . . . . . . 9

3.  Desire's Claims Are Not Barred
    By Consent or Ratification . . . . . . . . . . . . . . . . 11

4.  Desire's Claims Are Not Barred By SLUSA  . . . . . . . . . 13

5.  Desire's Claims Are Not Barred
    By the First Filed Doctrine  . . . . . . . . . . . . . . . 20

6.  Desire's Claims Are Barred Neither by Statute
    Nor By the Desire Trust Agreement  . . . . . . . . . . . . 21

7.  Desire's Unjust Enrichment Claim
    Should Not Be Dismissed  . . . . . . . . . . . . . . . . . 26

8.  Desire's Breach of Contract Claim
    Should Not Be Dismissed  . . . . . . . . . . . . . . . . . 26

9.  Desire's Tortious Interference Claim
    Should Not Be Dismissed  . . . . . . . . . . . . . . . . . 27

10. Desire's Claim for Injunctive Relief
    Should Not Be Dismissed  . . . . . . . . . . . . . . . . . 27

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

# Table of Authorities

**Cases**

*800-Flowers, Inc. v. International Florist*,
860 F.Supp. 128 (S.D.N.Y. 1994) . . . . . . . . . . . . 20, 21

*Abbasi v. Herzfeld & Rubin, P.C.*, 863 F.Supp. 144
(S.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . 9

*Behlen v. Merrill Lynch*, 311 F.3d 1087
(11th Cir. 2002) . . . . . . . . . . . . . . . . . . . 17

*Chiemeleski v. City Products Corp.*, 522 F.Supp.
917 (W.D. Mo. 1981) . . . . . . . . . . . . . . . . . 28

*Childress Painting & Assocs. v. John Q. Hammons
Hotels Two, L.P.*, 106 S.W.3d 558 (Mo. App. 2003) . . . . . . 26

*Cridlebaugh v. Putnam County State Bank of Milan*,
192 S.W.3d 540, (Mo. Ct. App. 2006) . . . . . . . . . . 26

*In Re Farmers' Exchange Bank*, 37 S.W.2d 936
(Mo. 1931) . . . . . . . . . . . . . . . . . . . . . 12

*Felton v. Morgan Stanley Dean Witter & Co.*,
429 F.Supp.2d 684 (S.D.N.Y. 2006) . . . . . . . . . . . 16

*First National City Bank and Trust Co. v.
Simmons*, 878 F.2d 76 (2d Cir. 1989) . . . . . . . . . . . 21

*Graves v. Berkowitz*, 15 S.W.2d 59 (Mo. App. 2000) . . . . . . 26

*Gray v. Seaboard Securities, Inc.*, 241 F.Supp.2d
213 (N.D.N.Y. 2003), *rev'd* 126 Fed. Appx. 14
(2d Cir. 2005) . . . . . . . . . . . . . . . . . . . 18

*Hagan v. Lantry*, 89 S.W.2d 522 (Mo. 1935) . . . . . . . . . 12

*Henry Ex. Rel v. City of New York*, 94 N.Y. 2d 275,
702 N.Y.S.2d 580, 582 (1999) . . . . . . . . . . . . . . 9

*Hughes v. LaSalle*, 419 F.Supp.2d 605 (S.D.N.Y. 2006) . . 10, 13

*Jenkins v. McKeithen*, 89 S.Ct. 1843, 395 U.S. 411,
23 L.Ed.2d 404 (1969) . . . . . . . . . . . . . . . . . 9

*Kingdom 5-KR-41, Ltd. v. Star Cruises, PLC*, No. 1
Civ. 2946, 2004 WL 444554 (S.D.N.Y. March 10, 2004) . . . . . 16

*Mason v. Ford Motor Company*, 755 F.2d 120 (8th
Cir. 1985) . . . . . . . . . . . . . . . . . . . . . 10

*Massie v. Barth*, 634 SW2d 208 (Mo. App. 1982) . . . . . . . 27

*MDCM Holdings v. Credit Suisse First Boston*,
216 F.Supp.2d 251 (S.D.N.Y. 2002) . . . . . . . . . . . . . 13

*Meridian Int'l Bank Ltd. v. Gov't of the
Republic of Liberia*, 23 F. Supp.2d 439
(S.D.N.Y 1998) . . . . . . . . . . . . . . . . . . . . . . 11

*Merrill Lynch Pierce Fenner & Smith, Inc.
v. Dabit*, 549 U.S.___, 126 S.Ct. 1503,
164 L.Ed.2d 179 (2006) . . . . . . . . . . . . . . . . 17, 19

*Motion Picture Lab. Technicians Local 780,
I.A.T.S.E. v. McGregor*, 804 F.2d 16 (2d Cir. 1986) . . . . . 21

*Nelson v. Browning*, 391 S.W.2d 873 (Mo. 1965) . . . . . . . 11

*Norman v. Solomon Smith Barney, Inc.* 350
F.Supp.2d 382 (S.D.N.Y. 2004) . . . . . . . . . . . . . 14, 15

*O'Brien v. Continental Ill. Nat'l Bank and
Trust Co. of Chicago*, 593 F.2d 54 (7th Cir. 1979) . . . . . 18

*Parnes v. Mast Property Investors, Inc.,* 776
F.Supp. 792 (S.D.N.Y. 1991) . . . . . . . . . . . . . . . . 9

*Press v. Quick & Reilly, Inc.*, 218 F.3d 121
(2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . 16

*SEC v. Zandford*, 535 U.S. 813 (2002) . . . . . . . . . . . 19

*Solow v. Stone*, 994 F.Supp. 173 (S.D.N.Y 1998) . . . . . . 11

*Spencer v. Wachovia Bank, N.A.*, No. 05-81016,
Slip. Op. (Fla. May 10, 2006) . . . . . . . . . . 17, 18, 19

*Spielman v. Merrill Lynch, Pierce, Fenner & Smith,
Inc.*, 2001 WL 1182927 (S.D.N. Y. 2001),
*aff'd* 332 F.3d 116 (2d Cir. 2003) . . . . . . . . . . . . . 16

*Strahler v. St. Lukes Hospital*, 706 S.W.2d 7
(Sup. Ct. Mo. 1986) . . . . . . . . . . . . . . . . . . . . 10

*Webster v. New York Life Ins. & Annuity Corp.,*
386 F.Supp.2d 438 (S.D.N.Y. 2005) . . . . . . . . . . . . . 13

*Y.W. by Smith v. National Supermarkets, Inc.,*
876 S.W.2d 785 (Mo. App., 1994) . . . . . . . . . . . . . . 11

**Statutes:**

Fed. R. Civ. P. Rule 12(b)(6) . . . . . . . . . . . . . . . . 9

15 USC §779p(b) . . . . . . . . . . . . . . . . . . . . 18

15 USC §78bb(f)(1) . . . . . . . . . . . . . . . . . . . 18

Mo. Rev. Stat. 469.905 . . . . . . . . . . . . . . . . . 22

Mo. Rev. Stat. 475.130 . . . . . . . . . . . . . . . . . 12

Mo. Rev. Stat. 475.134 . . . . . . . . . . . . . . . . . 12

Mo. Rev. Stat. 516.170 . . . . . . . . . . . . . . . . . 10

New York CPLR 208 . . . . . . . . . . . . . . . . . . . 9

**Other Authorities**

*Bogart, Trusts & Trustees 2d Ed.* Chapter 26, § 543 . . . . . 22

Federal Reserve Board Supervisory Letter SR 97-3 . . . . . . 22

Federal Reserve Board Supervisory Letter 99-7 . . . . . . . . 24

## PRELIMINARY STATEMENT

Desire Cobble ("Desire") is a 12 year old child who suffers from hyperbilrubinenema. She cannot read, cannot speak without mechanical assistance, does not know what money is, and is confined to a wheelchair. She will remain in this condition for the rest of her life.

Defendant Bank of America, N.A. ("BOA") and Desire's mother, Dawne Luleff, ("Luleff") were appointed trustees of the Desire Cobble Supplemental Needs Trust (the "Desire Trust" or "the Trust") pursuant to an Order of the Circuit Court of the City of St. Louis, Missouri *(Desire Cobble, a Minor, by her next friend, Dawne Luleff v. St. Louis Children's Hospital, et al, Case No. 992-08324).* Desire is the only beneficiary of the Desire Trust.

## 1.  The Claims Alleged in the Complaint

As alleged in the Amended Complaint ("Complaint"), BOA abused its position as fiduciary - and its control over the Desire Trust - to fatten the asset pool of its proprietary mutual fund family (the "Columbia Funds" formerly known as the "Nations Funds"). The Columbia Funds are managed by BOA's controlled affiliate, Columbia Funds Series Trust f/k/a/ Nations Funds Trust ("CFT"). CFT and other BOA affiliates charge investment advisory fees and other fees, thereby generating income and other benefits for BOA, its parent company defendant Bank of America Corporation ("BAC"), and their subsidiaries and affiliates.

Plaintiff alleges that the highest management of BOA and BAC decided to invest the assets of Desire's trust and other fiduciary accounts in the proprietary Columbia Funds.

BOA's investment of Desire Trust assets in its proprietary Columbia Funds imposed expenses on the Trust which Desire could ill afford: as the Missouri Court noted (BOA Exhibit 2 to the Andrew Messite Declaration in support of BOA's motion, Article I B) "the funds provided by this settlement [of Desire's medical malpractice action] may be inadequate to provide for [her] care, assistance and supervision." Desire is in constant need of costly medical attention and she will continue to need medical attention for the rest of her life.

BOA is one of the world's leading asset managers. As a corporate fiduciary, BOA holds itself out to the public as having expert investment skills. It could easily have invested the assets of the Trust fee and expense free directly in stocks and bonds appropriate to Desire's circumstances, or even in fee free common trust funds. Instead, it invested these assets in fee and expense-laden proprietary mutual funds which added an additional level of expense on the Trust and reduced the yield thereupon.[1] Further, after investing the assets of the Desire Trust in its proprietary Columbia Funds, BOA effectively washed its hands of all responsibility for the Desire Trust. Although certain Columbia Funds performed poorly, BOA never sought better managed or less expensive investments. The essence of this litigation is that BOA breached its fiduciary duties to Desire and all other beneficiaries of fiduciary accounts by selecting its proprietary

---

[1]     Defendants contend that they reduced trustee fees and other fees as a credit. These credits were largely illusory: the investment in defendants' proprietary mutual funds did increase the fees and expenses absorbed by the Desire Trust.

mutual funds as investments, without any consideration for direct investment and without looking for higher rated, lower cost non-proprietary investment vehicles.

Desire - by her mother and co-trustee Luleff - commenced this class action against BOA, CFT, BOA's parent BAC, and former CFT Chairman of the Board, William P. Carmichael ("Carmichael").

In order to simplify the claims before this Court, plaintiff has withdrawn the claims asserted against CFT and Carmichael and has submitted a stipulation to the Court to this effect.

Her Complaint alleges breach of fiduciary duty and breach of contract claims against BOA, tortious interference with fiduciary duty and tortious interference with contract claims against BAC, and unjust enrichment claims against BAC and BOA.

## 2.   **Defendants' Motion to Dismiss**

BOA and BAC assert a "grab bag" of meritless grounds for dismissal.  They argue that Desire's action should be dismissed under the "First Filed" rule, because it is substantively similar to *Siepel et al. v. Bank of America*, et al., 05-CV 2393 (E.D. Mo.).  Desire is not a party in the *Siepel* action.[2]  Moreover, while Desire's claims may be similar to the claims asserted in Missouri, she is not necessarily subject to the same defenses as the plaintiffs in that case.  Defendants successfully opposed transfer of this litigation to St. Louis for consolidation with *Siepel* and other related actions.  This case is now before this

---

[2]    She is a potential member of the as yet uncertified class in *Siepel*.

3

Court as a stand-alone but related class action.

Defendants also argue that the Securities Litigation Uniform Standards Act ("SLUSA") requires dismissal of this class action. SLUSA is irrelevant for two reasons. First, Desire does not allege that she was deceived by representations or omissions regarding investments - she lacks sufficient understanding to be deceived. She cannot read, does not understand what an investment is and does not know that funds are held in trust for her. Second, Desire did not purchase or sell securities; BOA purchased its proprietary Columbia Funds for her Trust account. Desire and Luleff were never the record holder of securities and they had no role in deciding how the Trust should invest. Defendants do not claim that Desire and/or Luleff played any role in the purchase of Columbia Funds. This simply is not a securities fraud case.

Desire alleges a simple breach of fiduciary duty claim: BOA used the Desire Trust to generate more fees for itself and its affiliates and to increase the capitalization of its proprietary mutual fund family, all at the expense of a mentally handicapped child. Defendants' representations or omissions of material facts to the investing public at large are not at issue in this case.

If the Court has any doubt that plaintiff's claims are not pre-empted by SLUSA, plaintiff requests leave to file a Second Amended Complaint to show that SLUSA is not applicable.

Defendants also argue that this action should be dismissed because Desire consented to and/or ratified BOA's breach of its fiduciary obligations. Desire is incapable of consent and

4

ratification and, as a matter of law, her mother Luleff can neither consent nor ratify on her behalf.

Defendants insist that this action be dismissed because the Complaint does not allege any loss.  The Complaint alleges that the Desire Trust was charged exorbitant and unnecessary fees and expenses due to the actions of her faithless fiduciary.  She was damaged when the Desire Trust paid these fees and expenses.

Defendants argue that Desire's claims are time-barred. There is no statute of limitations defense to actions by children and persons suffering from such profound mental disabilities that they cannot comprehend the wrongs they have suffered.

Defendants claim that Missouri Law and the Desire Trust agreement allowed investment in proprietary mutual funds.  This argument is a "red herring."  If BOA had determined in good faith (a mixed question of fact and law) that investing in the Columbia Funds was in Desire's best interest, it would be shielded by Missouri law and the Trust Agreement.  But since BOA's class-wide decision to invest fiduciary assets in the Columbia Funds was motivated primarily by its own financial interest, it cannot hide behind Missouri law, the Trust Agreement or any other document permitting investment of fiduciary assets in proprietary funds.

Defendants argue that Luleff has not stated a claim for breach of contract because she has not alleged any provision of the Desire Trust Agreement which BOA breached.  In fact, BOA breached its express contractual obligation to invest the Desire Trust's assets for Desire's benefit, rather than its own benefit.

5

Defendants make the factual contention that they were not unjustly enriched by the Desire Trust and their management of that Trust. Complaint ¶¶ 36, 38 and 48 – and others – clearly allege that defendants received unnecessary and exorbitant fees plus the benefits that accrued from bulking up the Columbia Funds at the expense of fiduciary accounts. The Complaint alleges that defendants knew of such benefits. Defendants' conclusory claim that they were not unjustly enriched raises factual issues which are not appropriately decided on a motion to dismiss.

Defendants argue that claims against BAC should be dismissed for lack of privity. If BAC was involved in formulating BOA's policy of investing fiduciary accounts (see, e.g., Complaint ¶¶ 21, 35, 38), and if BAC or its subsidiaries and/or affiliates were unjustly enriched by BOA's investment of the Desire Trust (see, e.g., Complaint ¶¶ 25, 28), then Desire has amply stated a claim against BAC for tortious interference with fiduciary duty, tortious interference with contract and unjust enrichment.

Defendants argue that Desire cannot sue for injunctive relief because BOA is no longer her Trustee. Although Desire's personal claim for injunctive relief is moot, she has a claim for damages and other members of the Class have claims for injunctive relief based on the same facts and law underlying Desire's claim for relief. The scope of plaintiff's representation of the Class and the appropriate relief for other Class members should be determined on a class certification motion, and not on this motion to dismiss.

6

**FACTS**

On or about November 9, 2001, Luleff and BOA were appointed Co-Trustees of the Desire Trust.  Luleff is not financially sophisticated.  She relied on BOA to make financial decisions for the Desire Trust.

Pursuant to its corporate policy, BOA invested the Desire Trust - and its other fiduciary accounts - in the proprietary Columbia Funds.  Plaintiff alleges - and for purposes of this motion the Court should accept as true - that BOA's decision to invest the assets of the Desire Trust in its proprietary mutual funds was motivated by its own interest in generating fees and bulking up its fund business, without any thought to Desire's best interests.  As the Complaint alleges, BOA (1) never sought bids from other mutual fund families, (2) never performed any analysis as to whether investment in the Columbia Funds more appropriate for the Desire Trust than investment in independent mutual funds, common trust funds (which would have resulted in no incremental fees or expenses beyond BOA's fee for serving as Co-Trustee) or other investment vehicles, (3) refused to negotiate the investment advisory fees and expenses that were being charged to the Columbia Funds by its subsidiaries and passed along to its fiduciary accounts, (4) refused to negotiate for similar or related services with non-affiliated firms, (5) never considered whether the Columbia Funds investment track record warranted its use as the exclusive investment vehicle for the Desire Trust, and (6) failed to divest those Columbia Funds

7

which substantially underperformed comparable mutual funds or
individual assets (Complaint ¶ 39).  As alleged at Complaint ¶¶
32-35, although BOA promised "world-class investment management"
to "customize unique and comprehensive" financial solutions for
its fiduciary accounts, it invested the Desire Trust pursuant to
computer generated "canned" portfolios, which utilized its
proprietary, "one-size-fits-all" Columbia Funds.

BOA's decision to invest the Desire Trust in its Columbia
Funds instead of investing directly in stocks and bonds or fee
free common trust funds proved costly.  BOA charged Trustee fees
for its computer-generated investment "decision" to invest the
Desire Trust's assets exclusively in its own proprietary mutual
funds. To add insult to injury, BOA's subsidiaries and affiliates
charged the Columbia Funds investment advisory and administrative
fees and expenses, which were then passed on to the Desire Trust
and the other fiduciary accounts invested in the Columbia Funds.
In short, BOA took advantage of its power over the Desire Trust
to enrich itself and its affiliates at Desire's expense.

In 2005, BOA's trust relationship terminated.

In early 2006, Desire, by her mother Luleff, commenced this
class action on behalf of all persons similarly situated (1) as
beneficiaries of fiduciary accounts where (2) defendant BOA
serves or served as corporate fiduciary, and (3) the assets of
such fiduciary accounts were invested in BOA's proprietary
Columbia Funds, managed by BOA's controlled affiliate CFT and its
subsidiaries.

8

**ARGUMENT**

1. **Standard of Review**

On a Fed. R. Civ. P. Rule 12(b)(6) motion to dismiss, a District Court must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom. *Jenkins v. McKeithen*, 89 S.Ct. 1843, 395 U.S. 411, 23 L.Ed.2d 404 ((1969); *Parnes v. Mast Property Investors, Inc.*, 776 F.Supp. 792 (S.D.N.Y. 1991). A motion to dismiss may only be granted where the allegations fail to state any claim upon which relief may be granted. *Abbasi v. Herzfeld & Rubin, P.C.*, 863 F. Supp. 144 (S.D.N.Y. 1994). The inquiry is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims. *Abbasi, supra*.

2. **Desire's Claims Are Not Time-Barred**

Plaintiff's claims are not time barred under either New York or Missouri law. New York CPLR 208 provides in pertinent part:

> If a person entitled to commence an action is under a disability because of infancy or insanity at the time the cause of action accrues, and the time otherwise limited for commencing the action is three years or more . . . the time within the action must be commenced shall be extended to within three years after the disability ceases . . ..

The New York Court of Appeals has held that the CPLR 208 tolling provisions apply to actions by guardians on behalf of minors and persons under a mental disability. *In Henry Ex. Rel v. City of New York*, 94 N.Y. 2d 275, 279-80, 702 N.Y.S.2d 580, 582 (1999), that Court held:

9

This Court has consistently recognized the special status that is accorded an infant plaintiff by virtue of the infant's tender age; that status is not altered by the action or inaction of a parent or guardian. (Citations omitted) . . . When the infant sues by a guardian ad litem, although the guardian may manage the suit and protect the infant's interests, it is the infant who is the real party to the action.  Thus it could not "be justly held . . . that rights accorded by the law to infants are forfeited because a parent did not perform for an infant where performance was excused because of the infancy . . .."

Missouri has similar tolling provisions for infants and incompetents.  Mo. Rev. Stat. 516.170 provides in pertinent part:

If any person entitled to bring an action . . . at the time the cause of action accrued be either within the age of twenty one years, or mentally incapacitated, such person shall be at liberty to bring such action within the respective times . . . after such disability is removed."

Like New York, Missouri's tolling provisions apply even where a guardian or next friend could bring an action on behalf of a minor or mentally incapacitated person.  *Mason v. Ford Motor Company*, 755 F.2d 120, 121 (8th Cir. 1985) held:

"Missouri law provides, however, that if a person is mentally incapacitated when his cause of action accrues, the statute of limitations is tolled until the disability is removed. . . . this tolling provision extends to actions brought by guardians of mentally incapacitated persons."

In *Strahler v. St. Lukes Hospital*, 706 S.W.2d 7 (Sup. Ct. Mo. 1986) the Missouri Supreme Court held - as a matter of State Constitutional law - that the ability of a minor to bring an action by parents or a next friend could not negate the tolling provisions of Mo. Rev. Stat. 516.170.

Defendants' reliance on *Hughes v. LaSalle*, 419 F.Supp.2d 605

(S.D.N.Y. 2006), *Solow v. Stone*, 994 F.Supp. 173 (S.D.N.Y 1998)
and *Meridian Int'l Bank Ltd. v. Gov't of the Republic of Liberia*,
23 F. Supp.2d 439 (S.D.N.Y 1998) is misplaced.[3] None of these
cases involve tolling provisions applicable to persons under a
disability.  These cases are irrelevant.  Defendants' statute of
limitations argument completely ignores Desire's status as a
minor under a disability.  Her claims are not time-barred.

**3.   Desire's Claims Are Not Barred By Consent or Ratification**

Defendants correctly assert that Missouri substantive law
applies to Desire's breach of fiduciary duty and unjust
enrichment claims.  They incorrectly conclude that under Missouri
law, Desire's claims are barred by consent and ratification.

Under Missouri precedent, "an infant's contractual capacity
is limited.  Their agreements are either void, or more often,
voidable." *Y.W. by Smith v. National Supermarkets, Inc.*, 876
S.W.2d 785, 787 (Mo. App., 1994). *Accord, Nelson v. Browning*,
391 S.W.2d 873, 878 (Mo. 1965) ("infants are incapable of binding
themselves by way of estoppel and are to be released from the
effect of facts which would create an estoppel against they if
they were of full age . . .")

Since Desire can neither consent to nor ratify BOA's breach
of its fiduciary obligations, defendants must show that Luleff
was authorized to consent and/or ratify its actions on Desire's

---

[3].  Hughes is now being appealed to the Second Circuit.

behalf.  They cannot meet this burden.[4]  Missouri recognizes the
general principle that "minors cannot be precluded from asserting
their rights . . . 'by reason of any negligence of their
guardians,'" *Hagan v. Lantry*, 89 S.W.2d 522, 529 (Mo. 1935).  Mo.
Rev. Stat. 475.130 governs the powers of guardians to bind their
charges.  That statute does not empower guardians to approve
large investments for their charges, and it only authorizes them
to settle claims which do "not exceed one thousand dollars."  Any
other claims can only be settled with authority of the Court.

    To the extent that the law does permit third parties to rely
upon guardians, it only does so when such third parties act in
good faith.  Mo. Rev. Stat. 475.134 provides in pertinent part
that "a person who in good faith either assists a conservator or
deals with him for value in any transaction other than those
requiring a court order is protected as if the conservator
properly exercised the power."  Bad faith "conduct of a third
person in dealing with the property of a ward cannot be ratified
by the guardian and curator on behalf of the ward."  *In Re
Farmers' Exchange Bank*, 37 S.W.2d 936, 942 (Mo. 1931).  In that
case, a bank argued that its improper acts regarding the property
of a person under a disability had been ratified by the guardian.
The Missouri Supreme Court ruled that a guardian:

    "had no power or authority to waive any right the wards

---

    [4]    Defendants' consent and ratification defense presents
mixed questions of fact and law — e.g., whether Luleff was
authorized to consent and whether she did in fact consent — which
are not properly decided on a motion to dismiss.

> may have had against the bank . . . A guardian's
> authority does not extend to the doing of any act
> detrimental to the ward.  We note, therefore, that the
> guardian did not by her conduct ratify the unauthorized
> acts of the bank in question."

*Hughes v. LaSalle Bank, N.A.*, 419 F. Supp.2d 605 (S.D.N.Y. 2006) does not support defendants' consent and ratification argument.  In *Hughes*, adult trust beneficiaries – none of them under a disability - were held to have consented to and ratified a bank's investment of trust assets in proprietary mutual funds.

Defendants' consent and ratification argument – like their statute of limitations argument - ignores Desire's inability to consent or ratify, and Luleff's legal incapacity to do so on her behalf.  This defense has no merit.

## 4.   **Desire's Claims Are Not Barred By SLUSA**

Although SLUSA pre-empts certain state law class actions relating to misrepresentations "in connection with" sales of securities, it does not pre-empt all breach of fiduciary duty and unjust enrichment class actions against securities brokers. *Webster v. New York Life Ins. & Annuity Corp.*, 386 F.Supp.2d 438, 441 (S.D.N.Y. 2005) (holding that "Just as plaintiffs may not avoid SLUSA pre-emption simply by artful pleading that avoids the actual words 'misrepresentation' or 'fraud', neither may defendants avoid every possible claim by recasting any lawsuit in which a securities broker is a defendant into a securities fraud action"); *MDCM Holdings v. Credit Suisse First Boston*, 216 F.Supp.2d 251 (S.D.N.Y. 2002).  In this case, BOA and BAC seek to avoid common law breach of fiduciary duty and contract claims by

twisting them into securities fraud claims.

The "gravaman" of the Complaint is neither untrue statements nor misleading omissions about BOA's investment of fiduciary assets in the Columbia Funds. The Complaint alleges that BOA abused its position as Trustee to enrich itself and its affiliates at Desire's expense.

Two SLUSA requirements are missing in this case. First, Desire could not possibly have been misled by misrepresentations and omissions about securities. Any BOA misrepresentations and omissions of fact were therefore only ancillary to its breach of fiduciary duty, breach of contract and unjust enrichment.

Second, Desire and her mother did not buy and sell the Columbia Funds: Desire had no power to invest the assets in her trust. As alleged in the Complaint, BOA made all investments for the Trust. Neither Desire nor her mother played any role in making the challenged investments in the Columbia Funds.

This case is very similar to *Norman v. Solomon Smith Barney*, Inc. 350 F.Supp.2d 382 (S.D.N.Y. 2004). In *Norman*, plaintiffs were the owners of discretionary brokerage accounts, where defendant brokerage firm directed all trades. The members of the *Norman* class never saw defendant's analyst reports, and therefore did not allege that they were misled into buying or selling securities from their accounts. Rather, they alleged the broker made unilateral investment decisions for their accounts in order to benefit its investment banking business and its investment banking clients, without regard for plaintiffs' best interests.

14

The *Norman* plaintiffs brought a class action for breach of contract and breach of fiduciary duty, and defendant broker moved to dismiss on SLUSA grounds.  In denying the motion to dismiss, this Court reasoned first that plaintiffs

> "purchased a service (portfolio management), pursuant to a contract, paid the fees for that service under the contract, and now allege . . . that in the course of providing some of the contracted for services, defendant breached its fiduciary duty to act in their best interests and not engage in activities that would place its interests in conflict with theirs."

350 F.Supp.2d at 387.

> The Court concluded that SLUSA was inapplicable because:

> "If Solomon provided its clients' portfolio managers with shoddy, useless research produced by conflicted analysts, they may well have violated its . . . fiduciary duties to those clients, even if the analysts reported their honest opinions and were thus not subject to suit under the federal securities laws."

350 F.Supp.2d at 388.

Like plaintiffs in *Norman*, Desire never saw any documents relating to BOA's decision to invest her trust corpus into its own proprietary mutual funds.  Unlike the *Norman* plaintiffs, she would not have understood such documents even if she had seen them.  Desire was the victim of conduct even more egregious than the "shoddy useless research produced by conflicted analysts" alleged in *Norman*.  And, like defendant in *Norman*, BOA had a fiduciary obligation to act in the best interest of its charges, rather than its own interest.  Desire's breach of fiduciary duty claim, like the breach of fiduciary duty claim in *Norman*, is not pre-empted by SLUSA.

15

Likewise, in *Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2001 WL 1182927 (S.D.N. Y. 2001), *aff'd* 332 F.3d 116 (2d Cir. 2003), the Court refused to find SLUSA pre-emption in a case challenging a broker's transaction fees.  The Court held that unless a plaintiff alleged that a purchase or sale of a security in reliance on representations, the "in connection with" requirement for SLUSA pre-emption is absent. The Court stated:

> "[w]hile the transaction fees charged by Merrill Lynch affect the cost of trading, this cost is part of Merrill Lynch's bargain with its account holders and is not sufficiently connected to the underlying securities to meet the requirement that the misrepresentations about those fees be ''in connection with' the purchase or sale of covered securities."

Like plaintiffs in *Spielman*, Desire does not allege that she bought or sold a security in reliance upon representations or omissions, and any misrepresentations as to defendants' fees would be "not sufficiently connected to the underlying securities" to meet the "in connection" requirement of SLUSA.

The cases cited by defendants in support of their SLUSA pre-emption argument are all inapposite.  *Press v. Quick & Reilly, Inc.*, 218 F.3d 121 (2d Cir. 2000) is not a SLUSA case - it involves only § 10(b) of the Securities Exchange Act of 1934, and Rules 10b-5 and 10b-10 promulgated thereunder.  *Kingdom 5-KR-41, Ltd. v. Star Cruises, PLC*, No. 1 Civ. 2946, 2004 WL 444554 (S.D.N.Y. March 10, 2004) is a clear cut SLUSA pre-emption case involving allegations of misrepresentations in connection with the sale of securities.  In *Felton v. Morgan Stanley Dean Witter & Co.*, 429 F.Supp.2d 684 (S.D.N.Y. 2006), the plaintiffs

16

argued that SLUSA did not apply because they "held" securities in reliance upon misrepresentations by a broker.  This claim was dismissed as pre-empted because the Supreme Court had previously held in *Merrill Lynch Pierce Fenner & Smith, Inc. v. Dabit*, 549 U.S.   , 126 S.Ct. 1503, 164 L.Ed.2d 179 (2006) that holding a security was the same as selling or buying for SLUSA purposes. By contrast, in this case Desire is neither a holder, purchaser or seller of Columbia Funds (although BOA is), and she does not claim to have relied on any representations or omissions.

Defendants' reliance on *Spencer v. Wachovia Bank, N.A.*, No. 05-81016, Slip. Op. (Fla. May 10, 2006) (BOA Exhibit 11) is misplaced and conflicts with several leading cases.  The *Spencer* Court relied primarily on *Behlen v. Merrill Lynch*, 311 F.3d 1087 (11th Cir. 2002). In *Behlen*, plaintiffs – who personally bought an "aggressive growth mutual fund" – sued a brokerage firm and a fund manager claiming that they were sold more expensive Class B shares when they were eligible to purchase cheaper Class A shares.  Plaintiffs alleged that they bought the Class B shares because they personally relied on defendants' misrepresentations. In finding that the fees and commissions paid by the Plaintiffs were "incidental to the sale of securities," the Court held SLUSA pre-empted the claims.

*Behlen* is distinguishable from this case for two reasons. First, unlike the *Behlen* plaintiffs, Desire did not purchase any securities – in fact she is not even a party to BOA's purchases of Columbia Funds shares for the Desire Trust.  She is merely a

17

beneficiary of that Trust.  Second, she did not rely on any representations or omissions by BOA.

Spencer also relied on Gray v. Seaboard Securities, Inc., 241 F.Supp.2d 213 (N.D.N.Y. 2003), rev'd 126 Fed. Appx. 14 (2d Cir. 2005).  In Gray, defendants allegedly misrepresented their affiliation with an analyst to plaintiff investors, who then sued for return of commissions.  Because the commissions accrued in connection with the plaintiffs' sale and purchase of securities, SLUSA pre-empted the state law fraud claims.

In addition to never buying or selling a security, Desire could not have "relied" on "an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security." [SLUSA, 15 USC §779p)(b); 15 USC §78bb(f)(1)].  Curiously, Spencer cites O'Brien v. Continental Ill. Nat'l Bank and Trust Co. of Chicago, 593 F.2d 54, 60 (7th Cir. 1979), for the proposition that even trustees of a pension fund trust who had given a bank investment authority could not sue under §10(b) of the Exchange Act because in such an instance, the bank's "failure to disclose information about the purchase or sale to the beneficiary or agent does not satisfy the 'in connection with' requirement of § 10(b). The enforcement of fiduciary and contractual duties owed by a trustee to agent to the beneficiary or principal is the concern of state law, not the federal securities laws."

Thus O'Brien directly undermines BOA's argument for SLUSA pre-emption.  Under O'Brien, the enforcement of BOA's fiduciary

18

obligations and its use of fiduciary accounts to bulk up its own
mutual fund business would not satisfy the "in connection with"
requirement of SLUSA, and could be determined under state law.

The *Spencer* Court determined whether the plaintiffs' claims
were "in connection with" the sale of securities by following *SEC
v. Zandford*, 535 U.S. 813 (2002) analysis of the "in connection
with" language used in Rule 10b-5.  The Supreme Court reiterated
its conclusion that an alleged fraud is "in connection with" a
purchase or sale of securities when the fraud coincides with the
purchase or sale.  However, the Complaint herein does not allege
that Desire was the victim of a fraud.  Since Desire was not a
party to BOA's purchases of its Columbia Funds, she does not have
a claim sounding in fraud - she has a breach of fiduciary duty
claim.  The "in connection with" requirement of SLUSA is not
applicable to plaintiff's claims of breach of fiduciary duty,
breach of contract or unjust enrichment.

*Spencer* also discusses the recent Supreme Court decision in
*Dabit*, where the Court extends SLUSA to include "holders" of
securities.  In *Dabit*, a broker and a former retail customer
alleged state law claims relating to a brokerage firm's
manipulation of stock prices, which resulted in the broker and
his clients delaying the sales of their securities.  Those who
delayed in selling are "holders."  The specific issue was whether
the holder's claims fell outside SLUSA's pre-emptive scope and
whether the Court's prior Rule 10b-5 analysis of "in connection
with" should be applied to SLUSA. The Court decided that if the

complaint alleges requisite fraud and misconduct such as that alleged therein--fraudulent manipulation of stock prices--the plaintiff's identity as a buyer, seller or holder did not matter and such claims are pre-empted.  Desire did not hold Columbia Funds shares in reliance on BOA's misrepresentations:  rather, BOA held such shares in her Trust account for reasons having nothing to do with any misrepresentations or omissions.

The issue in this case is not whether BOA made full and fair disclosure to Luleff.  Rather, the issue is whether it honored its fiduciary and contractual obligations to act in Desire's best interests.  The Complaint alleges - and the evidence will show - that BOA used Desire's Trust's assets to enrich itself unjustly and improperly at her expense.

If the Court determines that the Complaint, in its present form, is pre-empted by SLUSA, plaintiff requests leave to file an amended complaint to make clear that this case is not based in any way upon misrepresentations and/or omissions.

## 5.   Desire's Claims Are Not Barred By the First Filed Doctrine

"Where two courts have concurrent jurisdiction over an action involving the same parties and issues, courts will follow a "first filed" rule whereby the court which first has possession of the action decides it."  *800-Flowers, Inc. v. International Florist*, 860 F.Supp. 128, 131 (S.D.N.Y. 1994)

The first filed rule is inapplicable in this case because there is no other action involving the same parties.  Desire is not litigating her claims in any other cases, although she is a

potential member of an as yet uncertified Class in a case which BOA and BAC are moving to dismiss in Missouri.  There are now three separate actions by more than ten plaintiffs from around the country, asserting similar allegations of wrongdoing against defendants.

Defendants' reliance on *800-Flowers, supra, First National City Bank and Trust Co. v. Simmons*, 878 F.2d 76 (2d Cir. 1989) and *Motion Picture Lab. Technicians Local 780, I.A.T.S.E. v. McGregor*, 804 F.2d 16 (2d Cir. 1986) is misplaced.  Each of those cases involved concurrent cases by the exact same parties pending in different jurisdictions.  By contrast, here there are actions by different parties in different jurisdictions.

Moreover, although Desire's claims are substantively similar to the claims asserted in the two Missouri cases, she is not necessarily subject to the same defenses.  As set forth above, her claims cannot be dismissed on statute of limitations grounds, on consent and ratification grounds, or on SLUSA grounds.

Desire supported a motion to the Multi District Litigation Panel to consolidate these related cases in Missouri.  Defendants successfully opposed this motion.  They have thus "made their bed" in New York, and should be required to sleep in it.

## 6.    Desire's Claims are Barred Neither by Statute Nor by the Desire Trust Agreement

It is hornbook law that "the most fundamental duty of a trustee is that he must display throughout the administration of the trust complete loyalty to the interests of the beneficiary

21

and must exclude all selfish interest . . .." Bogart, Trusts &
Trustees 2d Ed. Chapter 26, § 543.  Mo. Rev. Stat. 469.905
states: "A trustee shall invest and manage the trust assets
solely in the interest of the beneficiaries."  (Emphasis added).
This comports with Desire Trust Agreement  Article X, § A:  "The
Trustee of the Trust established under this instrument shall be
authorized to take with regard to the administration, management
and investment of the Trust funds any action deemed by the
Trustee to be for the best interests of the Trust . . .."

Although Missouri allows banks to invest in proprietary
mutual funds, Missouri – like every other state in the Country –
does not allow banks to use fiduciary accounts for their own
financial gain at the expense of fiduciary account beneficiaries.
The decision to invest in proprietary mutual funds must be made
for the benefit of the fiduciary account beneficiaries – not the
bank trustee.

The Federal Reserve Board - which regulates banks - has also
weighed in on the fiduciary duty of loyalty owed by bank trustees
who would invest trust assets in proprietary mutual funds.  On
February 26, 1997, it issued Supervisory Letter SR 97-3 (Exhibit
1), which stated in pertinent part:

"Conflicts of Interest and Suitability"

In determining whether to convert common trust funds to
mutual funds, a banking organization must address the
possibility that the conversion could result in
conflicts between the best interests of the
organization and the best interests of its fiduciary
customers. The banking organization must also determine
that the mutual fund shares are suitable for accounts

22

which previously held common trust fund units. Banking
organizations that convert or transfer common trust
funds to mutual funds may face questions from current
and future beneficiaries with respect to these two
issues.

Potential conflicts can arise if a banking organization
were to charge a direct fee to the trust customer for
serving as trustee while also charging an advisor's fee
to the mutual fund. Investment advisor fees are not
ordinarily permitted to be charged to common trust
funds, and so it may appear that the organization's
primary motive for the conversion was a self-interest
in generating greater fee income. State law may
preclude charging of both fees. Moreover, in cases
where they are not prohibited, the organization should
review its discretionary fiduciary responsibilities for
each account in order to determine the extent to which
it may mitigate the appearance of a conflict through
proper disclosure and subsequent authorization by
beneficiaries who have appropriate powers under the
instrument.

Another possible conflict of interest could arise from
the use of proprietary mutual funds when there are
unaffiliated mutual funds or alternate investment
opportunities available that may be equally appropriate
for the participant's portfolio. Again, the appearance
that the organization put its own interests above those
of its fiduciary customers may cause concern
particularly if investments are made in a
newly-established proprietary fund with no history or
track record. It is important that the organization
thoroughly document its decision to transfer common
trust funds into proprietary mutual funds.

The investment objectives and attributes of the
organization's common trust funds that made them
suitable and authorized investments do not necessarily
carry over to the mutual funds that replace them.
Accordingly, management must demonstrate that it has
determined that the governing trust instrument for each
affected customer authorized investment in mutual funds
and that the mutual funds were suitable investments for
the particular accounts. For certain types of trust
accounts, such as a conservatorship or guardianship,
court approval may be required to invest in mutual

funds. For other accounts, amendments to agreements or
letters of direction authorizing investments in mutual
funds may be necessary. Prior investment decisions that
approved the purchase of common trust fund units for an
account's portfolio must be reconsidered to verify
suitability for all accounts about to receive mutual
fund shares. Management should maintain, and examiners
should review, documentation supporting the decision to
invest in or hold specific mutual funds."

The identical issue arises here where BOA could have
invested the Desire Trust's assets in-house in common trust funds
or other investment vehicles, without subjecting it to
unnecessary fees and expenses.  Instead, BOA chose to invest the
Desire Trust in its Columbia Funds, and to incur excessive fees.
Good for BOA – bad for a profoundly handicapped child who depends
heavily on BOA's duty of loyalty.

In 1999, the Federal Reserve Board published Supervisory
Letter 99-7 (Exhibit 2), which warned banks that:

Although many states laws now explicitly authorize
certain fee arrangements in conjunction with the
investment of trust assets in mutual funds,
institutions nonetheless face heightened legal and
compliance risks from activities in which a conflict of
interest exists, particularly if fiduciary standards
are not observed and documented.

BOA knew its fiduciary duty of loyalty when it invested the
assets of the Desire Trust and the other fiduciary assets
entrusted to its care.  As Gregory B. Jordan, Esq., the lead
defense attorney for BOA in the substantively similar *Siepel*
litigation wrote in an article (Exhibit 3) for his firm's banking
clients (Gregory B. Jordan, et al., Advanced Litigation Risk
Management for the Corporate Fiduciary, Reed Smith Library), the

24

state laws which allow banks to invest in proprietary mutual
funds:

> should not be viewed as a blanket waiver of a
> fiduciary's duty of loyalty in this context, but rather
> as a relaxation of the common law's traditional per se
> ban on such investments. In evaluating the prudence of
> such investments, the corporate fiduciary should
> consider the appropriateness of mutual funds as an
> investment and the advantages of proprietary funds over
> third-party funds.  The touchstone issue is the best
> interests of the beneficiaries.[5]

BOA wilfully disregarded its fiduciary responsibilities.
Its self serving business decision to invest fiduciary assets in
proprietary mutual funds never considered Desire's best interests
or the best interests of other fiduciary account beneficiaries.

Even after it invested the Desire Trust's assets in its
proprietary Columbia Funds, BOA failed to conduct on-going
reviews to determine whether its Columbia Funds were appropriate
investments for Desire's Trust and its other fiduciary account.
Poor investment performance never clouded BOA's determination to
leave assets of the Desire Trust invested in its proprietary
mutual funds.

BAC and BOA argue that the state laws which removed an
absolute common law prohibition against investing fiduciary
assets in proprietary mutual funds now allow bank trustees to
wash their hands of all fiduciary responsibility through the

---

[5]Discovery will elucidate whether Attorney Jordan's article
and other similar warnings were provided to defendants.  However,
since BOA is a banking client of Attorney Jordan's firm, it is
likely that BOA saw the article and chose to ignore its sagacious
advice regarding its fiduciary obligations in favor of a more
lucrative course of action.

25

simple expedient of investing in their own proprietary mutual funds.  This argument is contrary to their own attorney's advice, hornbook law and the pronouncements of the Federal Reserve Board.

## 7.  Desire's Unjust Enrichment Claim Should Not Be Dismissed

The elements of unjust enrichment are: (a) a benefit conferred by one party on another; (b) appreciation by the receiving party of the benefit; and (c) acceptance and retention of the benefit that would render that retention inequitable. *See, Cridlebaugh v. Putnam County State Bank of Milan*, 192 S.W.3d 540, 543 (Mo. Ct. App. 2006); *Childress Painting & Assocs. v. John Q. Hammons Hotels Two, L.P.*, 106 S.W.3d 558, 562 (Mo. App. 2003).

Defendants used the Desire Trust to realize excessive fees and other benefits, as alleged in the Complaint.  For purposes of an unjust enrichment claim, a defendant appreciates a benefit if it is more than an unwitting, passive party to the benefit.  *See e.g., Graves v. Berkowitz*, 15 S.W.2d 59 (Mo. App. 2000).  In this case, defendants actively procured the benefits at issue. As a faithless fiduciary, BOA would not be entitled to any benefits realized through its abuse of the Desire Trust.

The Court should credit plaintiff's factual assertion that it would be unjust for defendants to retain the benefits they received.  This is an issue of law and fact, not properly decided on a motion to dismiss.

## 8.  Desire's Breach of Contract Claim Should Not Be Dismissed

Defendants argue (p. 21) that Desire "does not point to any provision in the trust agreement which [BOA] failed to follow."

26

Trust Agreement Article X, § A required BOA to invest the Desire Trust assets "for the best interests of the Trust . . ." rather than for its own aggrandizement.  As alleged in detail in the Complaint, BOA failed to comply with this express provision of the Trust Agreement.

## 9.    **Desire's Tortious Interference Claim Should Not Be Dismissed**

Defendants argue that the claims against BAC should be dismissed because for lack of privity.

The Complaint alleges that BAC participated in and tortiously interfered with BOA's fiduciary duty to Desire.  In *Massie v. Barth*, 634 SW2d 208 (Mo. App. 1982), a trial court dismissed a claim for interference with fiduciary duty, and the appellate court reversed.  The Missouri Appeals Court expressly adopted - and quoted - the Restatement of Torts, Second § 326 position that "a third party who has notice that the trustee is committing a breach of trust and participates therein, is liable to the beneficiary for any loss caused by the breach of trust." Defendants have not cited any contrary authority.  If the policy of investing all fiduciary accounts in the proprietary Columbia Funds was formulated by BAC and BOA, Desire has a claim against BAC for interference with BOA's contractual and fiduciary obligations.

## 10.    **The Claim for Injunctive Relief Should Not Be Dismissed**

Defendants correctly note that Desire's personal claim for injunctive relief is now moot because BOA ceased acting as Trustee for her in 2005.  This is irrelevant in a class action.

27

Desire brought this action on behalf of a Class of persons, many of whom still have trust accounts or other fiduciary accounts with BOA.  There are common issues of law and fact governing all members of the Class, although not all members of the Class are entitled to the same relief.  Although Desire's personal claim for injunctive relief is moot, this fact does not necessitate dismissal of a claim for injunctive relief on behalf of all members of the Class so entitled.  *See, e.g., Chiemeleski v. City Products Corp.*, 522 F.Supp. 917 (W.D. Mo. 1981) (motion to dismiss action by former franchisees on behalf of themselves and class of former and present franchisees denied, even though former franchisee class representatives could not obtain injunctive relief themselves).

If the Court ultimately decides that this action may not proceed as a class action, defendants could then seek to dismiss any claim for injunctive relief as moot.

**CONCLUSION**

The Court should issue an order denying defendants' motion to dismiss and granting to plaintiff such other and further relief as this Court deems just and proper.

November    , 2006                    Daniel Cobrinik (DC 6406)
                                      2 Grand Central Tower
                                      140 East 45th Street - 25th Floor
                                      New York, New York 10017
                                      (212) 725-6888
                                      Counsel for Plaintiff and the Class

To: Reed Smith

28