**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x

DAWNE LULEFF, on behalf of her minor daughter : 
DESIRE COBBLE and all others similarly situated, :

                                 :    No. 06-CV-1435 (JGK)

               Plaintiff, :

                                 :

        v. :

                                   :

BANK OF AMERICA, N.A.; COLUMBIA :
FUNDS SERIES TRUST f/k/a NATIONS FUNDS :
TRUST; WILLIAM P. CARMICHAEL; and :
BANK OF AMERICA CORPORATION, :

                                 :

              Defendants. :

------------------------------------------------------------------------x

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS BANK OF AMERICA, N.A. AND BANK OF AMERICA CORPORATION'S MOTION TO DISMISS

REED SMITH LLP

599 Lexington Avenue

New York, New York 10022

(212) 521-5400

435 Sixth Avenue

Pittsburgh, PA 15219

(412) 288-3131

Attorneys for Defendants

Bank of America, N.A. and

Bank of America Corporation

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..............................................................................1

II.   BACKGROUND ..............................................................................1

III.  ARGUMENT ...................................................................................6

     A.    SLUSA Compels Dismissal of Plaintiff's Claims .....................................6

          1.    The Second Amended Complaint is a Failed Attempt at
Artful Pleading ...........................................................................8

          2.    The Plaintiff's Claims Fall Within the Purview of SLUSA
And Must Be Dismissed ..............................................................13

               a.    Plaintiff Continues to Plead Concealment. .....................................13

               b.    Plaintiff's Claims that the Bank Charged Excessive Fees
in Connection with the Investments Are Preempted Under
SLUSA .............................................................................14

               c.    Plaintiff Has Pled a Scheme and Deceptive Device
Bringing Her Claims Within the Ambit of SLUSA .........................17

     B.    If this Court Does Not Exercise Subject Matter Jurisdiction
under SLUSA, then the Second Amended Complaint Must be
Dismissed for Lack of Subject Matter Jurisdiction....................................19

          1.    The Court Lacks Subject Matter Jurisdiction Under CAFA Because
Plaintiff's Class Claims Concern a Covered Security ..................................20

          2.    The Court Lacks Subject Matter Jurisdiction Because Plaintiff's
Class Claims Arise from Fiduciary Duties and Obligations
Relating to a Security...................................................................21

IV.  CONCLUSION...............................................................................23

# Table of Authorities

**Page(s)**

## Cases

Andrews v. Metro North Commuter Railroad Co., 882 F.2d 705 (2d Cir. 1989) ...................... 12

Araujo v. John Hancock Life Ins. Co., 206 F. Supp.2d 377 (E.D.N.Y. 2002) ........................ 8, 13

Beckett v. Mellon Investor Servs., LLC, No. 06-5245, 2006 WL 3249189
    (W.D. Wash. Nov. 8, 2006) ................................................................................. 14, 15

Behlen v. Merrill Lynch, 311 F.3d 1087 (11th Cir. 2002)................................................ 7, 8, 14, 15

Bradfisch v. Templeton Funds, Inc., 179 Fed. Appx. 973 (7th Cir. 2006).................................... 16

Broadhead Limited Partnership v. Goldman Sachs & Co.,
    No. 06-009, 2007 WL 951623 (E.D. Tex. March 26, 2007) ............................................ 14, 15

Brooks v. Washovia Bank, No. 06-00955, 2007 U.S. Dist. LEXIS 68079
    (E.D. Pa. Sept. 14, 2007) ................................................................................................. 4

Dommert v. Raymond James Financial Services, Inc.,
    No. 06-cv-102, 2007 WL 1018234 (E.D. Tex. March 29, 2007) ...................................... 10, 15

Dudek v. Prudential Sec., Inc., 295 F.3d 875 (8th Cir. 2002) ...................................... 8, 13, 14, 15

Estate of Vail v. First of America Trust Co.,
    722 N.E. 2d 248 (Ill. App. Ct. 1999) .................................................................................. 2

Felton v. Morgan Stanley Dean Witter & Co.,
    429 F.Supp.2d 684 (S.D.N.Y. 2006) ......................................................... 7, 8, 9, 10, 14

Fisher v. Kanas, 487 F.Supp.2d 270 (E.D.N.Y. 2007) ................................................................ 16

Gilman v. BHC Securities, Inc., 104 F.3d 1418 (2d Cir. 1997) ..................................................... 19

Horattas v. Citigroup Financial Markets Inc.,
    No. 07-CV-122, 2007 WL 2702704 (W.D. Mich. Sept. 12, 2007) .................................... 16, 17

Hughes v. LaSalle Bank, N.A., 419 F. Supp. 2d 605 (S.D.N.Y. 2006)...................................... 2, 3

Hughes v. LaSalle Bank, No. 02-civ-6384, 2006 WL 1982983 (S.D.N.Y. July 14, 2006).......... 13

Indiana State Dist. Council of Laborers & HOD Carriers Pension Fund v. Renal Care Group,
    Inc., No. Civ. 3:05-0451, 2005 WL 2000658 (M. D. Tenn. Aug. 18, 2005)............................ 22

In re Am. Funds Fees Litig., No. 04-5593, 2005 U.S. Dist. LEXIS 41884
(C.D. Cal. Dec. 16, 2005) ........................................................................................ 16

In re Edward Jones Holders Litigation, 453 F.Supp.2d 1210 (C.D. Ca. 2006) ..................... 18, 19

In re Estate of Kopf, No. O.C. 71 of 2001 (Warren Cty. Orph. Ct. Dec. 31, 2001),
aff'd, 850 A.2d 20 (Pa. Super. Ct. 2004) ........................................................................ 2

In re Franklin Mut. Funds Fee Litig., 388 F. Supp.2d 451 (D.N.J. 2005) ................................... 18

In re Lutheran Bhd. Variable Ins. Prods. Co. Sales Practices Litig.,
105 F.Supp.2d 1037 (D. Minn. 2000) ........................................................................ 7

In re Salomon Smith Barney Mutual Fund Fees Litig.,
441 F. Supp. 2d 579 (S.D.N.Y. 2006) ........................................................................ 15

In re Textainer P'ship Sec. Litig., No. 05-0969, 2005 U.S. Dist. LEXIS 26711
(S.D.N.Y. 2006) ........................................................................................ 20, 22

Kingdom 5-KR-41, Ltd. v. Star Cruises PLC, No. 01-2946, 2004 WL 444554
(S.D.N.Y. March 10, 2004) ........................................................................................ 8, 9

Kutten v. Bank of America, No. 06-0937, U.S. Dist. LEXIS 63897 (E.D. Mo. Aug. 29, 2007) .. 4,
9, 10, 17

Lander v. Hartford Life & Annuity Ins. Co., 251 F.3d 101 (2d Cir. 2001) .................................... 6

McCullagh v. Merrill Lynch & Co., No. 01-7322, 2004 WL 744484 (S.D.N.Y. April 7, 2004). 13

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 547 U.S. 71 (2006) .............................. 6, 16

Myers v. Seneca Niagara Casino, 488 F. Supp. 2d 166 (N.D.N.Y. 2006) ................................... 19

Pauduano & Weintraub LLP v. Wachovia Securities, 185 F.Supp.2d 330 (S.D.N.Y. 2002) ....... 19

Pew v. Cardarelli, No. 05-1317, 2006 U.S. Dist. LEXIS 89025
(N.D.N.Y. Dec. 6, 2006) ........................................................................................ 20, 21, 22

Press v. Quick & Reilly, Inc., 218 F.3d 121 (2d Cir. 2000) ........................................................ 7

Prof'l Management Assocs, Inc. Employees' Profit Sharing Plan v. KPMG LLP,
335 F.3d 800 (8th Cir. 2003) ........................................................................................ 12, 14

Rabin v. JP Morgan Chase Bank, N.A., No. 06-5452, 2007 U.S. Dist. LEXIS 57437
(N.D. Ill. Aug. 3, 2007) ........................................................................................ 4, 17

Rowinski v. Salomon Smith Barney, 398 F.3d 294 (3d Cir. 2005) ........................................... 14

Siepel v. Bank of America, N.A., 239 F.R.D. 558 (E.D. Mo. 2006),
  recon. of dismissal denied, 2007 WL 679645 (E.D. Mo. March 1, 2007) ................ 3, 4, 13, 17

Sofonia v. Principal Life Ins. Co., 378 F.Supp. 2d 1124 (S.D. Iowa 2005) ................................... 7

Sofonia v. Principal Life Ins. Co., 465 F.3d 873 (8th Cir. 2006) .......................................... 7

Spencer v. Wachovia Bank, N.A., No. 05-81016, 2006 U.S. Dist. LEXIS 52374
  (S.D. Fla. May 10, 2006) ............................................................................ 4 , 17

Sulton v. Wright, 265 F. Supp.2d. 292 (S.D.N.Y. 2003)................................................... 12

U.S. Mortgage, Inc. v. Saxton, No. 04-17494, 2007 U.S. App. LEXIS 16830
  (9th Cir. July 13, 2007)................................................................................ 16

Williams v. Texas Commerce Trust Co., No. 05-1070, 2006 U.S. Dist. LEXIS 39743 ............. 22

Wynn v. AC Rochester, 273 F.3d 153 (2d Cir. 2001) ................................................... 19

**Statutes**

15 U.S.C. §77b(a)(1)............................................................................................. 21

15 U.S.C. §77p(b) .................................................................................................. 7

15 U.S.C. §77p(f)(3) ............................................................................................. 7

15 U.S.C. §77r(b)(1)(A)......................................................................................... 21

15 U.S.C. §77r(b)(2) .............................................................................................. 21

15 U.S.C. §77z-1 ................................................................................................... 6

15 U.S.C. §78bb(f)(1) ............................................................................................ 7

15 U.S.C. §78bb(f)(5)(B) ........................................................................................ 7

15 U.S.C. §78bb(f)(5)(E) ..................................................................................... 7, 21

15 U.S.C. §78j(b) .................................................................................................. 6

15 U.S.C. §78p(f)(3) ............................................................................................. 21

15 U.S.C. §78u-4 .................................................................................................. 6

26 U.S.C. §584(a)(1)............................................................................................. 2

28 U.S.C. §1332(d)(2) ........................................................................................... 19

28 U.S.C. §1332(d)(9)(A) .................................................................................................. 20

28 U.S.C. §1332(d)(9)(A)-(C) ........................................................................................... 20

28 U.S.C. §1332(d)(9)(C) ........................................................................................... 20, 21

28 U.S.C. §1367 ................................................................................................................ 19

Mo. Ann. Stat. § 362.550 ................................................................................................... 2

## Other Authorities

J. Langbein, Questioning the Trust Law Duty of Loyalty:  Sole Interest or Best Interest?,
114 Yale L.J. 929, 972-73 .............................................................................................. 2, 3

Rule 10b-5 (17 C.F.R. §240.10b-5) ................................................................................... 6

## I.     INTRODUCTION

As with the two previous versions of Plaintiff's complaints, the Second Amended Complaint alleges that Defendants Bank of America, N.A. (the "Bank") and Bank of America Corporation engaged in an unlawful and fraudulent scheme when the Bank invested some of Plaintiff's trust assets in its affiliated mutual funds.  Plaintiff presses these claims even though the state law in nearly every state (including her home state of Missouri) permits the investments. Apart from this lack of substantive merit, however, her claims remain preempted under the Securities Litigation Uniform Standards Act ("SLUSA") and must be dismissed.  Plaintiff continues to assert the very same scheme and allegations, trying only to excise language that triggers SLUSA preemption.  This sort of artful pleading does not, however, avoid SLUSA's preemptive bar.

In the event this Court concludes that it does not have subject matter jurisdiction under SLUSA, then this Court should dismiss this case because it otherwise lacks subject matter jurisdiction to hear this matter.  Plaintiff's only basis for original federal jurisdiction is under the Class Action Fairness Act ("CAFA").  Plaintiff's claims, however, fall within two exceptions to CAFA jurisdiction.  Claims concerning only a "covered security" or the rights and duties (including breach of fiduciary duty) concerning a security are exempted from CAFA's jurisdictional reach.  This case plainly concerns only investments in a covered security, and Plaintiff insists that her case involves a "simple" breach of fiduciary duty.  Accordingly, CAFA does not provide a basis for subject matter jurisdiction.  Because no other basis for jurisdiction is pleaded or exists, dismissal for lack of subject matter jurisdiction is warranted.

## II.     BACKGROUND

Plaintiff Dawne Luleff is the legal guardian and co-trustee for a trust (the "Luleff Trust") created for her minor daughter, Desire Cobble, in November, 2001.  See Second Amended Complaint ¶¶12-13.  Along with Plaintiff, the Bank served as co-trustee on the Luleff Trust until 2004.  See id. at ¶15.

At the core of Plaintiff's claims are allegations that the Bank did something unlawful when it invested some of the Luleff Trust's assets in the Bank's affiliated mutual funds, Columbia Funds.[1]  Yet, Missouri law, similar to the laws of nearly every other state, specifically authorizes a trustee to invest trust assets in affiliated mutual fund investments and to collect both the trustee and mutual fund fees.  See Mo. Ann. Stat. § 362.550 (11) ("a bank . . . when acting as a trustee . . . may invest and reinvest [trust] assets . . . notwithstanding that such bank . . . provides services to the investment company or trust... and receives reasonable remuneration for such services").[2]

This statutory authorization exists, moreover, for the benefit of trust customers.  Prior to 1996, common trust funds ("CTFs") were prevalent investment vehicles that banks created to pool assets to diversify the investments of personal trusts.  Under federal law, a "common trust fund" includes a fund maintained by a bank exclusively for the collective investment of moneys as a trustee.  See 26 U.S.C. § 584(a)(1).  "CTF" investments, however, are limited in a number of ways.  J. Langbein, Questioning the Trust Law Duty of Loyalty:  Sole Interest or Best Interest?,

---

[1]     Although not implicated in this motion, as co-trustee, Plaintiff had the same investment authority and fiduciary obligations as the Bank and authorized the investments in the Bank's affiliated mutual funds.  See Luleff Authorization, November 9, 2001 (Exhibit 1, Messite Affidavit).  Defendants are not, however, moving to dismiss based upon this consent and ratification ground.  See Hughes v. LaSalle Bank, N.A., 419 F. Supp. 2d 605 (S.D.N.Y. 2006) (dismissing similar claims brought by same counsel based upon consent and ratification).

[2]     Several courts, including this one, have confirmed that the investment of trust assets in affiliated mutual funds is permissible.  See, e.g., Hughes, 419 F. Supp.2d at 619 (holding that the trustee did not engage in self-dealing where its investments in affiliated mutual were authorized by law); Estate of Vail v. First of America Trust Co., 722 N.E.2d 248, 251-252 (Ill. App. Ct. 1999) (executor of an estate did not act improperly by investing in an affiliated fund, noting that the law allows investments in affiliated mutual funds); In re Estate of Kopf, No. O.C. 71 of 2001, slip. op. at *5-6 (Warren Cty. Orph. Ct. Dec. 31, 2001) (no breach of fiduciary duty because state law authorizes investments in affiliated mutual funds), aff'd, 850 A.2d 20 (Pa. Super. Ct. 2004).  Despite the authorization for the investments and collection of trustee and mutual fund fees, Plaintiff conceded previously that she is only seeking recovery of the fees paid because her investments did not suffer a loss.  Plaintiff's Memorandum of Law in Opposition to Bank of America's Motion to Dismiss the Amended Complaint at 5 ("She was damaged when the Desire Trust paid these fees and expenses.").

114 Yale L.J. 929, 972-73 (March 2005).  For example, many CTFs permit buying and selling shares of a CTF only once a month after the valuation of the fund has been completed.  Units or shares of CTFs cannot be transferred in kind when a trust closes, again in contrast to mutual funds.  This point can be critical if, at the time the trust is to terminate, selling the CTF units is not advantageous because it will trigger considerable capital gains tax consequences.  See id. at n. 231 (providing a summary of the advantages of mutual funds over CTFs).

In light of these limitations, the financial services industry generally concluded that "[m]utual funds have significant advantages over common trust funds, and in 1996 Congress facilitated the spread of mutual funds for trust investing by allowing tax-free conversion of existing common trust funds to mutual funds."  See id. at 973.  In light of these advantages, the vast majority of states, including Missouri, amended their laws to permit a trustee to invest trust assets in affiliated mutual funds.  These statutes contained varying requirements as to fees, notices, and disclosures.  See id. at 973-74.  Consistent with these authorizations, many major banks, including the Bank, exchanged the assets held in some CTFs for shares of affiliated mutual funds, as Plaintiff alleges in the Second Amended Complaint.

Despite the relevant state law, Plaintiff continues to press her "self-dealing" allegations.  There is nothing novel here.  Plaintiff's counsel, along with attorney Richard Greenfield, first asserted these same allegations five years ago in Hughes v. LaSalle Bank, 02 Civ. 6384 (S.D.NY).  Finding, as here, that the plaintiffs ratified the investments, Judge Mukasey dismissed that action.  Hughes, 419 F.Supp.2d 605.  After the filing of Hughes, Mr. Greenfield filed seven similar actions against Bank of America, including two pending in Missouri.  See Siepel v. Bank of America, N.A., 239 F.R.D. 558, 564 (E.D. Mo. 2006) (detailing the various actions and holding that "[t]he record provides ample evidence that Plaintiffs are forum shopping"), recon. of dismissal denied, 2007 WL 679645 (E.D. Mo. March 1, 2007).  In February, 2006, Plaintiff's

counsel then filed this case, the eighth action, also on behalf of a Missouri resident, seeking to represent the very same putative class as in the previously filed cases.[3]

In her original Complaint, Plaintiff alleged that Defendants engaged in unlawful and fraudulent conduct by investing her trust assets in the Bank's affiliated mutual funds, Columbia Funds. See Complaint ¶¶38-42, 57. This Complaint purported to bring a putative class action on behalf of all beneficiaries, owners, or principals of trusts for which the Bank acted as trustee. See id. ¶51. Plaintiff alleged that the Bank had a policy to invest trust assets in its affiliated funds to the detriment of Plaintiff. Id. ¶¶22-27. She expressly claimed that the purported policies were not disclosed and that the Bank fraudulently induced her into giving consent to the investments. Id. ¶¶44-50 (devoting an entire section of the Complaint to "Defendants' Failure to Make Full and Fair Disclosures" and repeatedly alleging non-disclosures and omissions concerning all aspects of the mutual fund investments). Based on these allegations, she asserted various state law claims.

After Defendants filed a motion to dismiss raising SLUSA preemption, Plaintiff filed an Amended Complaint again alleging that Defendants engaged in an unlawful and fraudulent scheme to invest trust assets in the Bank's affiliated mutual funds. See Amended Complaint ¶¶47-56, 64. Plaintiff attempted to avoid SLUSA preemption by excising from her allegations several references to misrepresentations and omissions. However, the Amended Complaint still repeatedly alleged non-disclosures and omissions concerning all aspects of the mutual fund

---

3    This is the final remaining action against Bank of America pressing class claims. All prior actions have been dismissed, with the sixth and seventh actions being dismissed based upon SLUSA preemption. See Siepel, 239 F.R.D. at 562-63; Kutten v. Bank of America, No. 06-0937, 2007 U.S. Dist. LEXIS 63897, at **8-23 (E.D. Mo. Aug. 29, 2007). Similar claims against Wachovia Bank and JPMorgan Chase Bank also have been dismissed. Rabin v. JPMorgan Chase Bank, N.A., No. 06-5452, 2007 U.S. Dist. LEXIS 57437, at **14-21 (N.D. Il. Aug. 3, 2007) (finding SLUSA preemption); Spencer v. Wachovia Bank, N.A., No. 05-81016, 2006 U.S. Dist. LEXIS 52374, at **6-26 (S.D. Fla. May 10, 2006) (finding SLUSA preemption); Brooks v. Wachovia Bank, No. 06-00955, 2007 U.S. Dist. LEXIS 68079 (E.D.Pa. Sept. 14, 2007).

investments, including alleged misstatements and omissions in the mutual fund prospectuses and other disclosure documents. See id. ¶37 ("The Bank never fully disclosed to plaintiff … its conflicts of interest …); ¶49 ("In order to disguise the Bank's 'double dipping' [regarding fees in connection with purchases of affiliated mutual funds]"); and ¶50 (information provided by the Bank in connection with expenses for affiliated mutual funds was "deceptive").

Defendants again moved to dismiss citing SLUSA preemption. See Docket No. 36. On September 7, 2007, this Court heard an oral argument where Plaintiff's counsel conceded that the Amended Complaint alleged misrepresentations and omissions. See September 7, 2007 Transcript at 18-19. The Court gave Plaintiff leave to amend. See id. at 22-24. Plaintiff has now filed her Second Amended Complaint but the factual underpinning for this complaint remains the same as the prior ones:  a putative class action lawsuit asserting state law claims, alleging a fraudulent scheme pursuant to which the Bank invested Plaintiff's trust assets in its affiliated mutual funds. See Second Amended Complaint ¶¶25-38.  In this round, Plaintiff did not change the underlying basis of her claims.  Rather, she simply omitted words such as "failed to disclose" and "conceal."  Further, the facts as alleged in her original and Amended Complaints have not changed.  The various relationships, policies, purported conflicts of interest, alleged double dipping and self-dealing either were or were not disclosed in the prospectuses, letters and authorizations Plaintiff received and/or signed.  Once again, she simply has deleted these allegations from her latest complaint. See id. ¶¶ 28-29.

Nevertheless, Plaintiff still pleads at length that the Bank's "Mutual Fund Policy" was a deceptive device because it "was intended to, and did, promote the Bank's interest in reducing its own internal expenses for maintaining and administering fiduciary accounts while, at the same time, increasing its fee and other income at the expense of Desire and other fiduciary account beneficiaries." Id. ¶¶ 28-29, 36, 43, 44, 46.  And, unable to avoid disclosure issues (because that truly is at the core of Plaintiff's claims), she still pleads that the Bank failed to document its actions and did not make that information available – that is, **_it did not disclose that information_**

– to beneficiaries.  Id. ¶32(vi) (emphasis added).  Further, she continues to allege that the Bank

failed to "offer" her additional services for the additional fees – again, raising an issue with what

the Bank said and provided to her in connection with the mutual fund investments.  Id. ¶34.

## III.    ARGUMENT

### A.    SLUSA Compels Dismissal of Plaintiff's Claims

More than a decade ago, Congress became concerned that the class action device was

being misused in securities cases. These concerns prompted Congress to enact the Private

Securities Litigation Reform Act of 1995 (the "1995 Reform Act"), codified at 15 U.S.C. §§ 77z-

1 and 78u-4. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 547 U.S. 71, 81 (2006).  The

1995 Reform Act imposes, among other things, heightened pleading requirements and discovery

stays in actions brought pursuant to Section 10(b) of the Securities Exchange Act of 1934 (15

U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R. § 240.10b-5).  547 U.S. at 81-82.

The 1995 Reform Act, however, produced certain "unintended consequence[s]" for

securities class actions nationwide. Dabit, 547 U.S. at 82.  "Rather than face the obstacles set in

their path by the Reform Act, plaintiffs and their representatives began bringing class actions

under state law, often in state court." Id.  To forestall this end run around federal securities laws,

Congress enacted SLUSA. Id.  SLUSA embodies a rule of "complete preemption" that compels

the dismissal of class actions asserting state law theories of liability that arise in connection with

the purchase or sale of covered securities. See Lander v. Hartford Life & Annuity Ins. Co., 251

F.3d 101, 107-08 (2d Cir. 2001).

In keeping with express federal policy, SLUSA preemption does not turn on the label

attached to, or the specific elements of, the causes of action alleged in a particular complaint.

SLUSA preemption instead applies whenever the statute's four-part test is satisfied. That is, with

very limited, express exceptions not relevant here, SLUSA preemption applies any time the

lawsuit: (1) is a "covered class action"; (2) asserts a claim based on state law; (3) involves a

"covered security"; and (4) alleges that the defendant misrepresented or omitted a material fact or employed any manipulative or deceptive device "in connection with the purchase or sale of such security." Behlen v. Merrill Lynch, 311 F.3d 1087, 1092 (11th Cir. 2002); see also Sofonia v. Principal Life Ins. Co., 465 F.3d 873, 876-77 (8th Cir. 2006); Felton v. Morgan Stanley Dean Witter & Co., 429 F.Supp.2d 684, 690-691 (S.D.N.Y. 2006) (citing Dabit, 126 S. Ct. at 1511-12). In addition to a misprepresentation, SLUSA also preempts claims where the defendant allegedly used or employed any manipulative device or contrivance in connection with the purchase or sale of a covered security. 15 U.S.C. § 77p(b); 15 U.S.C. § 78bb(f)(1).

Under SLUSA, a "covered class action" is a lawsuit in which damages are sought on behalf of more than 50 people. 15 U.S.C. §78bb(f)(5)(B). A "covered security" is one traded nationally and listed on a regulated national exchange. 15 U.S.C. § 78bb(f)(5)(E). Plaintiff has previously conceded that her Amended Complaint asserted a class action on behalf of more than 50 people based on state law and nothing in the Second Amended Complaint compels a different conclusion.[4] As with the Amended Complaint, the only disputes relating to SLUSA's application here turn on whether the Second Amended Complaint includes (1) allegations of false statements or omissions of material facts or use of a deceptive device (2) "in connection with" the purchase or sale of a covered security. Plainly, it does.

The disclosure of fees associated with mutual fund investments is an area comprehensively regulated by federal securities laws. See Press v. Quick & Reilly, Inc., 218 F.3d 121, 131-32 (2d Cir. 2000)(dismissing federal securities claims challenging disclosures about fees associated with money market mutual funds). Moreover, trustees like the Bank and (in some circumstances others,

---

[4]    See Plaintiff's Memorandum of Law in Opposition to Bank of America's Motion to Dismiss the Amended Complaint at 14 (arguing that only the last two elements for SLUSA preemption are not met here). There also can be no dispute that shares of Nations Funds are "covered" securities. See 15 U.S.C. §§ 77p(f)(3), 77r(b); Sofonia v. Principal Life Ins. Co., 378 F.Supp.2d 1124, 1128-29 (S.D. Iowa 2005) (definition of a covered security); In re Lutheran Bhd. Variable Ins. Prods. Co. Sales Practices Litig., 105 F.Supp.2d 1037, 1040 (D.Minn. 2000) (same).

like Plaintiff, who serve as co-trustees) regularly buy and sell securities, such as mutual funds, on behalf of trusts. A state law-based class action challenging the purchase and sale of those securities is precisely the type of action which SLUSA is intended to preempt.

Plaintiff's earlier complaints unquestionably were preempted by SLUSA. Plaintiff's artful pleading and amendments do not change this result. The crux of Plaintiff's claims remains misrepresentation and omission in connection with the purchase of a security. Further, her focus on the Bank's decisions and policies allegedly adopted to defraud customers by charging higher fees in connection with the purchase of mutual funds triggers yet another avenue for SLUSA preemption.

**1.     The Second Amended Complaint is a Failed Attempt at Artful Pleading**

Controlling case law forecloses a plaintiff from amending a complaint to "plead around" SLUSA by making the same allegations, but excising all references to misrepresentation and omission. See Behlen, 311 F.3d at 1095 (despite plaintiff amending complaint to remove allegations of misrepresentation and omission, SLUSA still applied); Dudek v. Prudential Sec., Inc., 295 F.3d 875, 879-80 (8th Cir. 2002) (although plaintiff amended complaint to delete allegations of fraud, misrepresentation and omission, SLUSA still applied); Araujo v. John Hancock Life Ins. Co., 206 F. Supp.2d 377, 384 (E.D. N.Y. 2002) ("The plaintiff argues that he may avoid SLUSA by omitting the allegations of fraud in the amended complaint. The Court disagrees.").

"Courts in this circuit have consistently rejected plaintiffs' attempts through artful pleading to avoid the clear precepts of SLUSA and its preemption of state law securities claims for damages." Kingdom 5-KR-41, Ltd. v. Star Cruises PLC, No. 01-2946, 2004 WL 444554, at *3 (S.D.N.Y. March 10, 2004). Where a plaintiff attempts to conceal claims based on the misrepresentation or omission using state law labels, courts have disregarded these labels and dismissed the claims as preempted by SLUSA. See Felton, 429 F.Supp.2d at 694; Kingdom,

2004 WL 444554, at *3; Kutten, 2007 U.S. Dist. LEXIS 63897, at *10-11 and cases cited therein.

Felton is particularly instructive.  There, the plaintiffs, a putative class of brokerage customers, first alleged that Morgan Stanley did not provide objective research advice in connection with their investments.  This first complaint included allegations of non-disclosure as the basis for its state law claims.  SLUSA accordingly applied.  In their Amended Complaint, the plaintiffs repled the same allegations, but framed them only as a breach of contract, which they argued fell outside of SLUSA's preemptive reach.  429 F.Supp.2d at 692.  The district court disagreed.  While the plaintiffs may have attempted to plead around SLUSA, the application of SLUSA preemption invokes the well-pleaded complaint rule:

> Ordinarily, a plaintiff is the master of his complaint, and whether or not a federal claim exists must be decided based on the face of the complaint's allegations. However, an exception to this "well-pleaded complaint" rule exists where federal law completely preempts a given field, and, in enacting SLUSA, "'Congress could not have spoken more clearly' about its intention 'to completely preempt the field of certain types of securities class actions by essentially converting a state law claim into a federal claim and creating federal jurisdiction and venue for specified types of state securities fraud claims.'" *Dabit I, 395 F.3d at 33* (vacated in part on other grounds)  (quoting *Spielman, 332 F.3d at 123*). As a result, "when SLUSA's conditions have been satisfied, the plaintiff has necessarily invoked federal question jurisdiction, even though he [or she] did not wish to, and the court must dismiss for failure to state a claim because SLUSA has preempted the state law basis for the claim." *Id. at 33-34* (internal quotation marks and citation omitted; alteration in original).

429 F. Supp. at 692.

The well-pleaded complaint rule, moreover, applies a different lens when considering the legal import of a complaint's revised allegations.  As the Felton Court further observed, a court must consider and resolve whether the plaintiff has engaged in artful pleading:

> "Under SLUSA, then, we must look beyond the face of the complaint to analyze the substance of the allegations made." *Id. at 34* (citing *Spielman* and *Dudek v. Prudential Secs., Inc., 295 F.3d 875, 879 (8th Cir. 2002)* (where complete preemption applies, "plaintiff may not avoid federal question jurisdiction and the preemption of state law claims by artfully concealing the federal question in an otherwise well-pleaded complaint under state law")); *see also Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc., 341 F. Supp. 2d 258, 265 (S.D.N.Y.*

*2004)* ("After *Spielman*, it is now clear that courts must probe the plaintiff's pleading to determine whether SLUSA preemption applies."); *Bowlus v. Alexander & Alexander Servs., Inc.*, 659 F. Supp. 914, 918 (S.D.N.Y. 1987) (in a case involving removal on the basis of a federal question under *28 U.S.C. § 1441(b)*, "a federal court may look behind the complaint to preclude a plaintiff from defeating federal question jurisdiction through 'artful pleading, 'that is, by disguising a federal claim as a claim arising under state law").

While facially the Amended Complaint alleges a common law claim for breach of contract, the question is whether plaintiffs are engaging in artful pleading to disguise substantive allegations that Morgan Stanley engaged in "[a] misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security," as those words are used in SLUSA, *15 U.S.C. § 78bb(f)(1)*. I conclude without difficulty that Plaintiffs' claim is a securities fraud wolf dressed up in a breach of contract sheep's clothing.

429 F. Supp. at 692-93 (footnotes omitted); <u>see also</u> <u>Kutten</u>, 2007 U.S. Dist. LEXIS 63897, at

**11-12 (addressing same claims raised herein and rejecting argument that SLUSA did not apply

because breach of fiduciary duty claims were "ancillary" to the purchase of the mutual fund

shares); <u>Dommert v. Raymond James Financial Services, Inc.</u>, No. 06-cv-102, 2007 WL

1018234, at **7-8 (E.D. Tex. March 29, 2007) (finding SLUSA preemption despite plaintiff's

assertions that she was not bringing claims based upon misrepresentations and omissions in

connection with the securities at issue).

The <u>Felton</u> Court also concluded that artful pleading was involved and the revised

complaint must be dismissed.  Fundamental to its reasoning was its finding that despite the

attempted amendment, the same scheme essentially was under attack from the first complaint to

the second.  As the Court in <u>Felton</u> stated, this is a "quintessential example of a fraudulent

omission of a material fact under the federal securities laws. . . .  Stripped to its essentials, the

Amended Complaint alleges that Morgan Stanley breached its contracts with Plaintiffs *by*

*engaging in a fraudulent scheme*.  To regard the Amended Complaint as alleging nothing more

than common law breaches of contract would reward artful pleading in a manner that the law

does not permit." <u>Felton,</u> 429 F.Supp. at 693 (emphasis in original).

Plaintiff here has engaged in the same sort of artful pleading when the pervious versions

of the present complaint are considered.  Plaintiff's allegations of a fraudulent scheme remains

intact, as was true in <u>Felton</u>.  For example, both the Amended Complaint and Second Amended

Complaint contend that Defendants "double dipped" by charging improper fees – both the trustee and affiliated mutual fund fee (notwithstanding that the law permits both fees), with no commensurate benefit to Plaintiff and putative class members.  Cf. Amended Complaint ¶48 with Second Amended Complaint ¶26.  While the Amended Complaint expressly alleges that the Bank *concealed* this information, in the Second Amended Complaint, plaintiffs allege that the Bank *knew* this information, leaving out the inevitable conclusion that they failed to so advise plaintiffs.  After all, what is the point of pleading that the Bank knew certain information, except to claim inevitably that it did not disclose that information.

| **Plaintiff's Amended Complaint** | **Plaintiff's Second Amended Complaint** |
|---|---|
| 49.     In order to *disguise* the Bank's "double dipping" (i.e. charging fees for serving as a corporate fiduciary and charging fees through the Columbia Funds), a portion of the fees and expenses charged to the Columbia Funds were "credited" against the fees charged by the Bank for acting as a fiduciary. | 28.     The Bank and BAC *knew* at all times that the Bank's Mutual Fund Policy would enrich the Bank at Desire's expense and the expense of other fiduciary account beneficiaries.  The Bank and BAC also *knew* that the Bank's Mutual Fund Policy conferred no corresponding benefits to Desire and other fiduciary account beneficiaries. |
| 50.     However, these so-called "credits" were *deceptive* and were insufficient to cover the increased investment-related expenses charged to the Bank's fiduciary accounts, which expenses could have either been minimized by using alternative, non-proprietary mutual funds or in-house investment pools such as Common Trust Funds, which incurred no fees or expenses.<br><br>52.     Even after the Bank applied its "credits" against its direct fees, *it was impossible for plaintiff to ascertain the true cost of owning Columbia Funds shares in the Cobble Trust.*<br>(emphasis added) | 29.     The Bank's Mutual Fund Policy was intended to, and did, promote the Bank's interest in reducing its own internal expenses for maintaining and administering fiduciary accounts while, at the same time, increasing its fee and other income at the expense of Desire and other fiduciary account beneficiaries, in violation of the Bank's fiduciary obligations to Desire and other fiduciary account beneficiaries. |

The allegations in Plaintiff's previous complaints constitute admissions in the context of this motion.  See Andrews v. Metro North Commuter Railroad Co., 882 F.2d 705, 707 (2d Cir. 1989) ("The amendment of a pleading does not make it any the less an admission of the party."); Sulton v. Wright, 265 F. Supp.2d. 292, 295 (S.D. N.Y. 2003) ("Admissions in earlier complaints remain binding when a plaintiff files subsequent pleadings . . . [a]s such, the Court may consider them on a motion to dismiss under Rule 12(b)(6)."). Further, when filing an amended complaint, "[a] party . . . cannot advance one version of the facts in [his] pleadings, conclude that [his] interests would be better served by a different version, and amend [his] pleadings to incorporate that version, safe in the belief that the trier of fact will never learn of the change in stories." Andrews, 882 F.2d at 707 (citations omitted).

A plaintiff should not be allowed to plead securities fraud, as plaintiffs clearly did in their Complaint and Amended Complaint, and then omit admissions pertinent to the claims in a later amendment to try to avoid the federal standards to plead a securities fraud claim.  This is precisely what the 1995 Reform Act and SLUSA were intended to prevent.  Stated differently, Plaintiff is now trying to plead around SLUSA by telling only half the story.  She leaves out the implicit consequences of the Bank's allegedly unlawful "decision," including her admissions in the first Complaints, which she will inevitably argue to a jury – that the Bank never told her the information it knew.  Plaintiff's implicit allegations may be considered in the SLUSA preemption analysis.  Prof'l Mgmt. Assocs., Inc. Employees' Profit Sharing Plan v. KPMG LLP, 335 F.3d 800, 802 (8th Cir. 2003) (applying SLUSA preemption to implicit allegations of misrepresentations and omissions in connection with securities purchases).

This Court previously recognized that the allegations in the Amended Complaint triggered SLUSA preemption.  Plaintiff now has done nothing more than reword the allegations and excise misrepresentation and omission "buzz words" in the Second Amended Complaint.

Plaintiff's artful pleading should not be countenanced.[5]  The gravamen of these allegations – that Defendants failed to provide promised services and that Defendants knowingly concealed improper fees as to the mutual fund investments – is the same.  See, e.g., Dudek, 295 F.3d at 879-80 (court determined plaintiff engaged in artful pleading by comparing complaint to previous version of complaint filed in New York District Court); Araujo, 206 F. Supp.2d at 385 (court determined plaintiff engaged in artful pleading because crux of amended complaint and original complaint was same).  Having been given three attempts to amend here, Plaintiff's Second Amended Complaint should be dismissed with prejudice.  See McCullagh v. Merrill Lynch & Co., No. 01-7322, 2004 WL 744484, at *2 (S.D. N.Y. April 7, 2004) (denying motion for reconsideration and affirming dismissal with prejudice because plaintiff could not allege claims that would escape SLUSA preemption).

## 2.    The Plaintiff's Claims Fall Within the Purview of SLUSA and Must be Dismissed

### a.    *Plaintiff Continues to Plead Concealment*

In addition to the artful pleading described above, the Second Amended Complaint on its face triggers SLUSA preemption.  Plaintiff continues to allege that Defendants maintained a policy of only investing in the Bank's affiliated mutual funds as a means to charge excessive and improper fees and to reduce the Bank's internal expenses.  See Second Amended Complaint ¶¶25-29.  Plaintiff contends that Defendants failed to establish investment policies and procedures, failed to document transactions, failed to make documents relating to transactions available, and failed to review investment accounts to ensure the appropriateness of the mutual

---

[5]    See also Hughes v. LaSalle Bank, No. 02-Civ-6384, 2006 WL 1982983, at *6 (S.D.N.Y. July 14, 2006) ("Pleading is not an interactive game in which plaintiffs file a complaint and then volley it over a rhetorical net with the court until a viable complaint emerges.  Plaintiffs have the responsibility to plead their case adequately, without defendants' or the court's assistance."); Siepel, 239 F.R.D. at 564, 571 (denying further amendment as futile and unjust given plaintiffs' "shilly-shallying" efforts with amendments).

fund investments. <u>See</u> <u>id.</u> ¶32(v)-(vii). She also repeatedly claims that the Bank's purported "Mutual Funds Policy" created inherent conflicts of interest. <u>See</u>, <u>e.g.</u>, <u>id.</u> ¶3.

At the heart of all of these allegations is the Bank's alleged failure to disclose the allegedly unlawful practices and conflicts. Without such omissions, these allegations would be of no moment as a basis for Plaintiff's state law claims. These allegations are, moreover, incorporated into each of Plaintiff's state law claims. This renders her entire complaint subject to dismissal. <u>See</u> <u>Rowinski v. Salomon Smith Barney,</u> 398 F.3d 294, 300 (3d Cir. 2005) (finding SLUSA preemption when alleged omissions and misrepresentations were incorporated into every claim); <u>Prof'l Management Assocs., Inc. Employees' Profit Sharing Plan,</u> 335 F.3d at 803 (same); <u>Felton,</u> 429 F. Supp. 2d at 687; <u>Broadhead Limited Partnership v. Goldman Sachs & Co.,</u> No. 06-009, 2007 WL 951623, at **4-5 (E.D. Tex. March 26, 2007).

### b.  *Plaintiff's Claims that the Bank Charged Excessive Fees in Connection with the Investments Are Preempted Under SLUSA*

Plaintiff also continues to allege that Defendants charged excessive and improper fees. <u>See</u> <u>Second Amended Complaint</u> ¶45 ("All members of the Class were subjected to increased and/or unnecessary fees and expenses[.]"). Indeed, Plaintiff's claim of excessive fees, passed on via the mutual fund investments, is pervasive. <u>See</u> <u>id.</u> ¶¶ 23-24, 26, 28-29, 32, 36-37.[6] Numerous courts have rejected plaintiffs' arguments that a claim for excessive fees in connection with the purchase or sale of a security does not involve a claim of misrepresentation or omission, triggering SLUSA preemption. <u>Behlen,</u> 311 F.3d at 1094; <u>Dudek,</u> 295 F.3d at 878-79 (8th Cir. 2002); <u>Beckett v. Mellon Investor Servs., LLC,</u> No. 06-5245, 2006 WL 3249189, at **2-3 (W.D. Wash. Nov. 8, 2006) (rejecting plaintiff's attempt to avoid SLUSA by excising out all claims of misrepresentation and finding that plaintiffs' claim that defendant charged excessive fees was

---

[6]     Plaintiff conceded previously that the only relief she is seeking in this action is recovery of the purported excessive fees. Plaintiff's Memorandum of Law in Opposition to Bank of America's Motion to Dismiss the Amended Complaint at 5.

preempted by SLUSA even where the complaint contained "no explicit reference to any fraudulent activity such as a misrepresentation or omission of material fact"); In re Salomon Smith Barney Mutual Fund Fees Litig., 441 F. Supp. 2d 579, 603-04 (S.D.N.Y. 2006) (finding plaintiff's attempt to distinguish between misrepresentations and omissions connected with the purchase of securities with an assessment of purportedly improper fees unavailing); Dommert, 2007 WL 1018234, at *11 (finding SLUSA preemption where plaintiff alleged claims for undisclosed conflicts of interest and excessive fees).

In Dudek, for example, the plaintiffs alleged that annuities were improper investments because of excessive fees.  295 F.3d at 877; see also Behlen, 311 F.3d at 1094 (summarizing Dudek decision).  They then argued that their claims were not preempted by SLUSA because "they were based upon the defendants excessive fees rather than misconduct 'in connection with' the sale of securities."  Behlen, 311 F.3d at 1094 (citing Dudek, 295 F.3d at 878).  The Dudek Court, however, rejected the argument that the plaintiffs were not alleging fraud, misrepresentation, or an omission of material fact.  The court instead found that the gravamen of the plaintiffs' complaint "involved an untrue statement or substantive omission of a material fact in connection with the purchase or sale of a covered security." Behlen, 311 F.3d at 1094 (quoting Dudek, 295 F.3d at 879 (internal quotation marks omitted));[7] see also Beckett, 2006 WL 3249189, at * 4 ("Claims that investment advisors breached fiduciary duties in charging unauthorized fees have been held to necessarily coincide with the sale or purchase of securities and are based in part on material omissions or the misrepresentations concerning the fees," even where plaintiff does not plead omission or misrepresentation).

---

[7]    Similarly, in Behlen, the plaintiff complained that she was sold shares that generated higher fees.  311 F.3d at 1089-90.  Just as Plaintiff claims here with respect to the Bank's alleged "Mutual Fund Policy," the reason the plaintiff in Behlen claimed she was sold the shares in question was to generate the higher fees.  Id.  "Thus, the fees and commission were not merely incidental to the sale of the securities, but were an integral part of the transaction" bringing the transaction within the scope of SLUSA.  Broadhead Limited Partnership, 2007 WL 951623, at *4 (summarizing and citing to Behlen).

This broad construction of SLUSA's preemptive reach – aimed at the essence of a complaint's allegations – comports fully with the broad reading the Supreme Court mandated for SLUSA in Dabit. There, the Supreme Court affirmed that SLUSA's "in connection with" requirement is to be interpreted broadly and flexibly to prohibit any deceptive practices "*touching*" the purchase or sale of a security. See Dabit, 547 U.S. at 85-86. The Supreme Court further held that "it is enough that the fraud alleged 'coincide' with a securities transaction—whether by the plaintiff or by someone else." Id. at 85. See also U.S. Mortgage, Inc. v. Saxton, No. 04-17494, 2007 U.S. App. LEXIS 16830, at *26 (9th Cir. July 13, 2007); Fisher v. Kanas, 487 F.Supp.2d 270 (E.D.N.Y. 2007) (finding SLUSA preemption and confirming that the "'well-recognized presumption that Congress envisioned a broad construction' for the SLUSA") (quoting Dabit, 126 S.Ct. at 1513-14; In re Am. Funds Fees Litig., No. 04-5593, 2005 U.S. Dist. LEXIS 41884 (C.D. Cal. Dec. 16, 2005) (dismissing state law claims due to their "inextricable interrelationship" with the purchase or sale of securities.)

The broad preemptive reach of SLUSA in this precise context recently was confirmed in Horattas v. Citigroup Financial Markets Inc., No. 07-CV-122, 2007 WL 2702704 (W.D. Mich. Sept. 12, 2007). In Horattas, defendants were charged with mismanaging two trust accounts by selling mutual funds and other covered securities held in the trusts and misappropriating trust assets. The Court held that given the broad reading of "in connection with" in Dabit, SLUSA encompassed the claims. Id. at **27-30.[8]

---

[8]     The "presence of allegations of negligent management of the securities or imprudent investment of the trust funds cannot help [a plaintiff] escape the broad preemptive bar of SLUSA[.]" Horattas, 2007 WL 2702704, at *9; see also Bradfisch v. Templeton Funds, Inc., 179 Fed. Appx. 973, 973 (7th Cir. 2006) ("Although the plaintiffs maintain that Dabit does not control because (in their view) the defendant funds have been negligently managed, they have not sought relief through derivative litigation and therefore cannot take advantage of the exception for that kind of suit in the Securities Litigation Uniform Standards Act of 1998."). Such allegations still meet SLUSA's "in connection with requirement" under Dabit. See Horattas, 2007 WL 2702704, at *9.

In addition, three other courts have addressed allegations similar to those made here and have held that SLUSA preemption applies. Kutten, 2007 U.S. Dist. LEXIS 63897, at **8-23; Rabin, 2007 U.S. Dist. LEXIS 57437, at **14-21; Siepel, 239 F.R.D. at 567-570; Spencer, 2006 U.S. Dist. LEXIS 52374, at **6-26. Each of these cases involved state law claims of breach of fiduciary duty and unjust enrichment linked to a scheme of alleged "double dipping," undisclosed conflicts and excessive fees in connection with the bank/trustee's investment of trust assets in affiliated mutual funds. In each case, the courts, relying on Dabit, found SLUSA's "in connection with requirement" was met because the alleged schemes coincided with the investment of trust assets in affiliated mutual funds. See Kutten, 2007 WL 2485001 at **4-9; Rabin, 2007 U.S. Dist. LEXIS 57437, at **21-22; Siepel, 239 F.R.D. at 568-69; Spencer, 2006 U.S. Dist. LEXIS 52374, at *20. Plaintiffs here allege the same state law claims based upon the same alleged scheme. Following Dabit and other relevant cases, this Court should find that the "in connection with" requirement is satisfied here.

### c. *Plaintiff Has Pled a Scheme and Deceptive Device Bringing Her Claims Within the Ambit of SLUSA*

Plaintiff's focus on the Bank's alleged decision and "Mutual Fund Policy" triggers yet another avenue for SLUSA preemption – based upon use of a fraudulent scheme or deceptive device. As Plaintiff alleges, this purported policy "enabled" the Bank to perpetrate the alleged fraud – by allegedly making one-sided investment decisions and overcharging its trust customers with the mutual fund investments. See Second Amended Complaint ¶¶2, 25-26, 29, 43-44. She further alleges that in 1997 the Bank made a business decision to implement this scheme to increase its fees via Columbia Funds mutual fund investments. Id. ¶25. Following this decision, the Bank then moved assets from CTFs to its affiliated funds all as part of his alleged scheme to increase fees. Id. According to Plaintiffs, the implementation of this scheme and policy:

> ➢ "*enabled*" Defendants to enrich themselves by double dipping (id. ¶26);
> ➢ "*created* an inherent conflict of interest which pitted the interest of the Bank and its parent Bank of America Corp. ("BAS") in maximizing fees. . . ." (id. ¶3);

> ➤ "***ensured*** that in every instance, the fiduciary's financial interests trumped the beneficiaries' interests. . . ." (<u>id.</u> ¶4); and,

> ➤ "***was intended to***, and did, promote the Bank's interest in reducing its own internal expenses for maintaining and administering fiduciary accounts while, at the same time, increasing its fee and other income at the expense of Desire[Cobble] . . . ." (<u>id.</u> ¶29).

(Emphasis added).

As Plaintiff thereafter alleges, the purported Policy drove the Bank's conduct with respect to the mutual funds, keeping from her, as she claims, the true nature of the investments, the decisions and the costs. The lack of clear information led her to be "fraudulently induced" to consent to the investments. <u>Complaint</u> ¶47. While "fraudulent consent" is excised, the Second Amended Complaint includes the same "Policy" as the linchpin of its purported deceptive scheme.

Even to the extent the "Policy" is not a deceptive device, the purported "business decision" to implement the alleged Policy to increase fees to the detriment of plaintiffs is simply another artful way to plead a fraudulent scheme giving rise to SLUSA preemption. As the court held in <u>Edward Jones</u>, "although precise allegations are 'artfully' absent, it is virtually axiomatic that, had Plaintiff and the other Class members received 'unbiased' investment advice, they would have sold their Preferred Fund shares . . . . Thus, the Court concludes that the conduct which forms the basis for Defendant's alleged illegal scheme falls within the ambit of SLUSA." <u>In re Edward Jones Holders Litigation</u>, 453 F.Supp.2d 1210, 1215 (C.D. Ca. 2006); <u>see</u> <u>also</u> <u>In re</u> <u>Franklin Mut. Funds Fee Litig.</u>, 388 F. Supp.2d 451 (D.N.J. 2005) (holding that SLUSA preempted state law claims premised upon a fraudulent scheme). Similarly, Plaintiff without question pleads that Defendants engaged in a "scheme," just using less inflammatory language than in her original Complaint. As in <u>Edward Jones</u>, and as noted above, the import of these allegations is that but for this undisclosed scheme or policy, Plaintiff would not have consented to the investments. Accordingly, her class claims are preempted by SLUSA.

**B.** **If this Court Does Not Exercise Subject Matter Jurisdiction Under SLUSA, then the Second Amended Complaint Must be Dismissed for Lack of Subject Matter Jurisdiction**

Federal courts are courts of limited jurisdiction. See Wynn v. AC Rochester, 273 F.3d 153, 157 (2d. Cir. 2001). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it[.]" Myers v. Seneca Niagara Casino, 488 F. Supp. 2d 166, 169 (N.D. N.Y. 2006). The plaintiff bears the burden of proving that subject matter jurisdiction exists. See id.

The Second Amended Complaint alleges federal jurisdiction under 28 U.S.C. §1332(d), the Class Action Fairness Act ("CAFA").[9] See Second Amended Complaint ¶13. CAFA generally confers federal courts with original subject matter jurisdiction over class actions with a proposed class of at least 100 members, where the amount in controversy exceeds $5 million, and where any member of a class of plaintiffs is a citizen of a different state from any defendant. See 28 U.S.C. §1332(d)(2). Although the overarching goal of CAFA was to expand federal jurisdiction over most class actions, CAFA specifically exempts class actions that involve a claim solely concerning a covered security:

(9)    Paragraph (2) shall not apply to any class action that solely involves a claim –

---

[9]    The Second Amended Complaint also alleges supplemental jurisdiction under 28 U.S.C. §1367. Supplemental jurisdiction is not implicated here, however, because the Court does not have original jurisdiction over any of Plaintiff's claims. Furthermore, Plaintiff may not invoke diversity jurisdiction pursuant to 28 U.S.C. §1332, as she has not pled and she indeed cannot meet the $75,000 amount in controversy requirement. It is well established that "each of several plaintiffs asserting separate and distinct claims must satisfy the jurisdictional-amount requirement if his claim is to survive a motion to dismiss." Gilman v. BHC Securities, Inc., 104 F.3d 1418, 1422 (2d Cir. 1997) (quoting Snyder v. Harris, 394 U.S. 332 (1969)). While Plaintiff has alleged that the putative class has suffered at least $5 million in damages as a whole, she has not alleged that she, nor any member of the class, has suffered $75,000 individually. See Second Amended Complaint ¶8. Therefore, this Court does not have jurisdiction over this matter pursuant to 28 U.S.C. §1332. See, e.g., Pauduano & Weintraub LLP v. Wachovia Securities, 185 F.Supp.2d 330 (S.D.N.Y. 2002) (remanding matter to state court where plaintiff did not meet amount in controversy requirement).

(A) concerning a covered security as defined under 16(f)(3) of the
Securities Act of 1933 and section 28(f)(5)(e) of the Securities
Exchange Act of 1934;

**********

(C) that relates to the rights, duties (including fiduciary duties), and
obligations relating to or created by any security as defined under
section 2(a)(1) of the Securities Act of 1933.

See 28 U.S.C. §1332(d)(9)(A) & (C).  CAFA's exceptions are applicable here and, therefore,

"carve out" Plaintiff's claims from this Court's jurisdiction.

### 1.    The Court Lacks Subject Matter Jurisdiction under CAFA Because Plaintiff's Class Claims Concern a Covered Security.

Section 1332(d)(9)(A) of CAFA divests this Court of subject matter jurisdiction over

Plaintiff's class claims because those claims solely concern a "covered security."

Section 1332(d)(9)(A) exempts from CAFA those class actions involving claims concerning

securities that are nationally traded or listed on national exchanges, while SLUSA requires

dismissal of state law claims involving nationally traded securities.  See Pew v. Cardarelli, No. 05-

1317, 2006 U.S. Dist. LEXIS 89025, at *19 n. 9 (N.D. N.Y. Dec. 6, 2006).  Thus, the purpose and

effect of Section 1332(d)(9)(A) is to prevent CAFA from disturbing the impact of SLUSA.  See

id.; see also In re Textainer P'ship Sec. Litig., No. 05-0969, 2005 U.S. Dist. LEXIS 26711, at

**14-15 (N.D. Cal. July 27, 2005) ("The purpose of the [CAFA] exceptions is to avoid disturbing

in any way the federal vs. state court jurisdictional lines already drawn in the securities litigation

class action context by the enactment of [SLUSA].").  However, CAFA's exception is even

broader than SLUSA, excepting all claims solely concerning a "covered security" from CAFA's

jurisdictional reach.

There is no dispute that the Bank's affiliated mutual funds, Columbia Funds mutual

funds, satisfy the definition of a "covered security"[10] under Section 1332(d)(9)(A) because

---

10    A "covered security" under 28 U.S.C. § 1332(d)(9)(A) incorporates the definition from
the Securities Act of 1933 and the Securities Exchange Act of 1934.  See 15 U.S.C. §
                                        Continued on following page

Columbia Funds are listed on a national exchange and are issued by a registered investment company.  See infra at n.4 & 10.  Further, Plaintiff's class allegations focus solely on the investments in Columbia Funds mutual funds.  See Second Amended Complaint ¶¶ 55-56, 59-61, 63-64.

### 2.    The Court Lacks Subject Matter Jurisdiction Because Plaintiff's Class Claims Arise From Fiduciary Duties and Obligations Relating to a Security

Section 1332(d)(9)(C) also divests this Court of subject matter jurisdiction because Plaintiff's class claims relate "to the rights, duties (including fiduciary duties) and obligations relating to or created by any security as defined under Section 2(a)(1) of the Securities Act of 1933."  Here, again, there can be no dispute that the Bank's affiliated mutual funds, Columbia Funds mutual funds, is a security as broadly defined in Section 2(a)(1).  Under 15 U.S.C. §77b(a)(1), the term "security" means "any note, stock, treasury stock, security future, bond, debenture, evidence of indebtedness . . . or, in general, any interest or instrument commonly known as a "security."  Congress defined the term "security" to be "sufficiently broad to encompass virtually any instrument that might be sold as an investment."  Pew, 2006 U.S. Dist. LEXIS 89025, at *14 n. 3.

There is also no dispute that Plaintiff's claims relate to "rights, duties (including fiduciary duties) and obligations" relating to or created by Columbia Funds.  Plaintiff's claims for breach of fiduciary duty, aiding and abetting and unjust enrichment all related to Plaintiff's alleged

---

Continued from previous page
   78p(f)(3) and 15 U.S.C. § 78bb(f)(5)(E).  In turn, 15 U.S.C. § 78bb(f)(5)(E) states that "the term 'covered security' means a security that satisfies the standards for a covered security specified in paragraph (1) or (2) of section 18(b) of the Securities Act of 1933 [15 U.S.C. § 77r(b)].  Section 77r(b)(1)(A) defines a "covered security" as one "listed, or authorized for listing, on the New York Stock Exchange or the American Stock Exchange, or listed, or authorized for listing . . . ."  Section 77r(b)(2) also defines a "covered security" as one "issued by an investment company that is registered, or that has filed a registration statement, under the Investment Company Act of 1940."  There is no dispute that the Bank's affiliated mutual funds, Columbia Funds mutual funds, meet this definition of covered security.

rights, and Defendants' alleged obligations, created by or relating to the investment of the Luleff Trust's assets in Columbia Funds mutual funds. See Second Amended Complaint ¶¶ 55-56, 59-61, 63-64, 66-67. Courts have broadly interpreted the "rights, duties (including fiduciary duties) and obligations" language from Section 1332(d)(9)(C) to include any type of claim that relates to a covered security, and Plaintiff's claims fall within that broad definition. See Williams v. Texas Commerce Trust Co., No. 05-1070, 2006 U.S. Dist. LEXIS 39743, at *15 (W.D. Mo. June 15, 2006) (exception applied to state law claims for breach of fiduciary duty, breach of contract, negligence, equitable restitution, accounting, constructive trust and conspiracy arising from a trust indenture); Pew, 2006 U.S. Dist. LEXIS 89025, at *15 (exception applied when the "essence of plaintiffs' claim is that defendants engaged in deceptive acts and practices by misrepresenting and concealing the true nature of the investment"); Indiana State Dist. Council of Laborers & HOD Carriers Pension Fund v. Renal Care Group, Inc., No. Civ. 3:05-0451, 2005 WL 2000658 (M.D. Tenn. Aug. 18, 2005) (exception applied to state law breach of fiduciary duty and self-dealing claims in connection with corporate merger); In re Textainer, 2005 U.S. Dist. LEXIS 26711, at *24 (exception applied because plaintiff's claims involved "fiduciary duties relating to or created by or pursuant to" limited partnership interests which were securities).

## IV.   **CONCLUSION**

Despite Plaintiff's artful pleading, her claims continue to be preempted under SLUSA. Alternatively, if the Court does not exercise jurisdiction over this matter pursuant to SLUSA and dismiss the claims, then the Court should dismiss this case for lack of subject matter jurisdiction because Plaintiff's claims clearly fall with CAFA's jurisdictional exceptions.  Accordingly, this Court should grant Defendants' Motion to Dismiss.

Dated:  October 2, 2007

REED SMITH LLP

By: _Andrew B. Messite_

Andrew B. Messite (ABM-3748)
599 Lexington Avenue, 29th Floor
New York, NY  10022
Telephone:  212.521.5400
Facsimile:  212.521.5450

and

Gregory B. Jordan
Mary J. Hackett
Sharon L. Rusnak
435 Sixth Avenue
Pittsburgh, PA 15219
Telephone:  412.288.3131
Facsimile:  412.288.3063

Attorneys for Defendants
Bank of America, N.A. and
Bank of America Corporation